156 A.2d 914 (1959)
Corrado FRANCO et al.
v.
ZONING BOARD OF REVIEW OF THE TOWN OF SMITHFIELD.
M. P. No. 1255.
Supreme Court of Rhode Island.
December 30, 1959.
*915 Newton, Brodsky & Kiernan, Francis J. Kiernan, Archibald B. Kenyon, Jr., Albert B. West, Providence, for petitioners.
Thomas F. Kelleher, Town Solicitor of Smithfield, Providence, for respondent.
POWERS, Justice.
This is a petition for certiorari to review the decision of the zoning board of review of the town of Smithfield in denying the petitioners' application for an exception or a variance under the zoning ordinance of that town. Pursuant to the writ the pertinent records have been certified to this court.
It appears therefrom that four brothers, Corrado, Philip, Raymond and Angelo Franco, are the owners of a six-acre tract of land abutting the southerly side of Putnam Pike in the town of Smithfield. The property in question is located in a district zoned "Residence No. 1." It further appears that the owners desired to build a shopping center which would eventually consist of eight units, but for the time being would be limited to a supermarket and a drugstore. Such a use not being permitted in a "Residence No. 1" district, they applied to the board for an exception or a variance under the provisions of article XVI, section 1, of the zoning ordinance, the pertinent provisions of which are:
"When in its judgment, the public convenience and welfare will be substantially served, and the appropriate use of neighboring property will not be substantially or permanently injured, the Board of Review may, in a specific case, after public notice, at a hearing, and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established, as follows:
"1. Permit minor irregularities in the alignment of buildings.
"2. Grant the extension of a building or use into a more restricted district immediately adjacent thereto.
"3. In undeveloped sections of the town allow temporary and conditional permits for structures and uses that do not conform to the regulations herein prescribed, provided that no such permit shall be for more than a two-year period.
"4. Authorize the change of a non-conforming use to one no more harmful or objectionable in its judgment.
"5. Vary any requirement or use classification of this ordinance in harmony with its general purposes and intent, so that substantial justice may be done."
At the hearing before the board on September 3, 1958, Angelo Franco, one of the petitioners, testified that the property had been purchased about one year previously; that during the time they had owned it no attempt had been made to sell it for residential purposes; that he had no idea how many house lots could be developed in the area; that the eight stores would cost a quarter of a million dollars; and that, after allowing for a parking area to accommodate 500 to 600 cars, they would plant a buffer zone of trees and shrubbery at least 20 feet from the property line of Dr. John P. Pascone, an abutting remonstrant.
Nicholas Caldarone, a real estate expert, testified that he had viewed the property; that he knew it was filled-in land; that it *916 was not suitable for residential purposes; that the use which petitioners sought to make of their property would not substantially or permanently injure the neighboring property; that the land had been filled to a depth of not more than 300 feet; and that the cost of filling in the remaining 260 feet would be prohibitive. It was his opinion that a commercial development would be the most valuable use of the property and as such would not create a greater traffic problem than would be created by the entrance to a residential plat, although he also testified that the shopping development would require police supervision because of increased traffic.
This testimony was generally corroborated by Marion E. Gallagher, a local real estate agent, who also testified that she had several builders view the property and that within a month one such builder had told her, "* * * it would be a waste of money." She was not asked and did not elaborate on the significance of this remark. The theme of all testimony for petitioners was basically that of hardship.
Six remonstrants appeared and registered their protests. In opposition to the opinions expressed on behalf of the petitioners they testified that to grant the exception or variance would depreciate the value of surrounding property; that it would constitute a traffic problem; that they had built their homes believing the district would remain residential; and that denial of the application would not result in hardship to petitioners.
The petitioners failed to get four votes in favor of their application as required by general laws 1956, § 45-24-19, and it was denied on the grounds that "the proposed building would depreciate the value of surrounding property and that the stores in question are not necessary to care for the needs of the people residing in the area * * *."
The petitioners contend that on the basis of the evidence before it the action of the board in denying their application was illegal, arbitrary and an abuse of discretion. They quote at length from the testimony of petitioner Angelo Franco and the two real estate experts who testified on their behalf, and urge that, when considered in the light of the testimony given by remonstrants, which petitioners characterize as nothing more than "fears," it is clear that petitioners met the burden imposed on them by the evidence They argue that by distinguishing between the evidence presented by them and the misgivings expressed by remonstrants, which were not supported by facts, it is obvious that the board misconceived the evidence and on review here its decision should be reversed.
Further they contend that the language used by the board on the issue of public convenience and welfare demonstrates that it misconceived the rule applicable thereto as laid down by this court in Nutini v. Zoning Board of Review, 78 R.I. 421, 82 A.2d 883, 884. There it was held that the phrase "public convenience and welfare" referred to the public generally and that a construction that it referred only to persons living in the immediate neighborhood was not tenable. The petitioners contend that from the language used by the board it is clear that it had in mind the immediate neighborhood rather than the public generally.
The decision in the Nutini case does not help petitioners since the issue here is one of proof. There is no evidence whatsoever in the record to support a finding that the public convenience and welfare would be substantially served. The evidence on the question of substantial or permanent injury to surrounding property was in conflict. It seems to us that from all of the evidence on this issue there were reasonable inferences which the board might draw to support a finding that petitioners had failed to meet the burden of proof. We are of the opinion that its denial of the application for an exception was not illegal, arbitrary or an abuse of discretion.
*917 Counsel for petitioners contend, however, that if they failed to establish their right to an exception they did establish their right to a variance under G.L.1956, § 45-24-19, subd. c, wherein it is provided that the board of review shall have the power "To authorize upon appeal in specific cases such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."
Counsel for respondent argues that petitioners applied under article XVI, sec. 1, of the zoning ordinance which relates only to applications for exceptions. We disagree with this narrow construction. The application form supplied by the board calls for an indication by the applicant of the "Provision or regulation of zoning ordinance or State Enabling Act under which application for exception or variation is made." The answer typed in the appropriate space is "Article XVI, Section 1 of Zoning Ordinance." The article and section thus referred to in the ordinance specifically include the authority of the board to act upon the application for a variance as authorized by the enabling act. We are of the opinion that the scope of the application should be liberally construed.
However, we find no evidence in the record upon which the board could have granted a variance. It is well settled that the unnecessary hardship referred to in the enabling act requires a finding of the loss of all beneficial use of one's property. See Denton v. Zoning Board of Review, R.I., 133 A.2d 718. In the instant case one of the petitioners testified that they had made no attempt to sell the property for residential purposes during the year they had owned it and that he had no idea how many house lots could be developed from the property. The expert witness Caldarone testified that the land was not suitable for residential purposes because it was filled-in land, much of which remained to be filled in and the cost of such filling would be prohibitive. No estimate of the expense involved is given to support the opinion that the cost would be prohibitive. See Pistachio v. Zoning Board of Review, R.I., 147 A.2d 461.
In Ricci v. Zoning Board of Review, 72 R.I. 58, 47 A.2d 923, 924, the petitioner sought an exception to construct a gasoline station in a residential district. The evidence showed that the land was soft and damp and required filling in to bring it up to grade. We held that there was no evidence showing that the use of the applicants' land for a gasoline station was the only beneficial use for which it was reasonably suitable. We also said, "Mere inconvenience or additional expense necessary to make the land available for beneficial uses within the scope of the ordinance will not warrant us in holding that, in the circumstances of this case, the decision of the board was arbitrary or contrary to law." In our opinion the petitioners here failed the meaning of the enabling act as construed in that case.
The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the records in the case which have been certified to this court are ordered sent back to the respondent board.