ALFRED GEMMA, *et ux.* *v.*
ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON.

JANUARY 2, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is a petition for certiorari to review a decision of the respondent board of review in granting a variance to permit the construction of an apartment house on land zoned dwelling house A district. We issued the writ and in response thereto the appropriate records have been duly certified to this court.

It appears therefrom that Carmine J. Bonitati and his brother Roland are the owners of a parcel of land consisting of approximately two acres situated at 301 Oaklawn avenue, being on the westerly side of said avenue and the

north corner thereof, at the intersection of Dean street and located in a dwelling house A district. The Bonitatis maintain their residence in a two-family, nonconforming dwelling house situated on the land in question.

On December 27, 1960 application was made by Carmine J. Bonitati, hereinafter called the applicant, to the respondent board for an exception or variation pursuant to the provisions of sec. 27B (8) and sec. 27C of the ordinance. The board granted a variance pursuant to sec. 27C, which reads as follows:

> "Variance in cases of unnecessary hardship. Upon application in a specific case, the board of review may authorize such variance in the application of the terms of this chapter as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of this chapter will result in unnecessary hardship, and so that the spirit of the chapter shall be observed and substantial justice done."

The application was duly advertised and a hearing was held on January 26, 1961. A number of remonstrants appeared in opposition to the application, among them the instant petitioners.

The applicant testified that he and his brother had owned the property in question for some ten years; that there was a large and deep depression in the land ranging from a depth of 8 feet, taking the grade from Oaklawn avenue, to 30 feet, taking the grade from the rear of the lot; and that Dean street climbs steadily to a bridge which crosses railroad tracks at the rear of the property. It appears that the property runs from 380 to 390 feet back from Oaklawn avenue and that the depression or hollow is of major proportions, being 220 feet by 115 feet.

The applicant, a professional builder, testified that he had considered building one-family dwelling houses but decided, as he says, "it will entail an awful lot of expense.

It means you have to build up the area to the grade of Dean Street." He also testified that at one time he started to have the depression or hollow filled in, but ordered the work stopped when he realized how expensive it would be. He further testified that the cost of the fill alone would be $14,250, and that to put the premises in condition for the permitted use it would also be necessary to build a wall at the rear of the property and along the railroad tracks for approximately 360 linear feet. In addition to this expense it would be necessary to have the property subdivided into separate lots, requiring the installation of added retaining walls. His testimony on this point was, "Say you had four lots—those walls would have to be anywhere from 8 feet, four under ground and four above, and two inches thick. It would run $1575." He estimated that the total cost would approximate $30,000.

He concluded that the only possible use which might be made of the property, in keeping with its character as a residential district, would be the construction of an apartment house. He testified that he intended to construct a 17-unit apartment house which would front on Oaklawn avenue and be set back 35 feet. It appears from the plans in evidence that the building would also be set in 25 feet from Dean street, the rear of the property being devoted to a black top parking area for the use of tenants. It was planned, applicant added, to rent the apartments at $200 to $225 monthly.

Nicholas Caldarone, who qualified as a realtor, testified on behalf of the applicant. He stated that he had thirty years' experience in dealing with real estate and was thoroughly familiar with the city of Cranston and the particular area in which applicant's property is located. He testified that the proposed apartment house would not depreciate the value of surrounding property; that there was a need for multiple dwellings in the area; and that within the immediate neighborhood there were six such multiple

dwellings consisting of one containing seven, four containing four and one containing three uits. This latter testimony was given by lot references to a map which was introduced as applicant's exhibit. It appears therefrom that all six are located within a distance of 2,000 feet from either side of applicant's property.

The witness further testified that he had advised applicant against using the property for single-family dwellings. Asked specifically if he had discussed such a possibility with the applicant, he replied, "Yes, I recommended to him to disregard the single-family residential uses. I didn't feel it would be economically wise or beneficial to place a single family dwelling on the lot. They present too many problems of grade, retaining walls or fill."

The record discloses that a number of remonstrants who own the property on the south side of Dean street, as well as petitioners, appeared in opposition. Several testified in effect that conforming to the permitted use would not constitute a hardship, the property in their opinion being adaptable to as many as eight or ten single-family dwellings. John M. D. Suesman, vice chairman of the city planning commission, was permitted to read into the record those excerpts from the minutes of a planning commission meeting which related to their objection to the application. In substance the objection was that the granting of the application would be detrimental to the future development of Cranston.

D. Thomas Russillo, a registered architect since 1933, testified that he lived about 500 feet from the property in question. He expressed the opinion that single-dwelling units were feasible, produced a suggested plan which he had drawn, and suggested that it was possible to lay out eight individual lots. He did not, however, testify as to the cost.

Milton F. MacIntosh, residing on property located across the railroad tracks at the rear of applicant's property, testified in general opposition. He also contradicted the wit-

ness Caldarone as to the number of multiple dwellings in the area and the applicant as to the type of construction shown by the plans. At the conclusion of the hearing, however, he qualified his opposition.

Joseph J. Scholter testified that he had resided at the southwest corner of Oaklawn avenue and Dean street for 25 years. He stated that until the previous year the rocks on applicant's property had not been present and had been placed there as fill. Mr. Scholter also objected generally but was particularly articulate as to the increase in the traffic hazard which he testified would result if the application were granted.

Upon the completion of the hearing the board took the application under advisement and on March 14, 1961 rendered their decision granting a variance subject to the following conditions:

"1. The building is to be erected 40′ from Oaklawn Avenue and 35′ from Dean Street.

"2. All parking is to be in the rear of the building.

"3. A suitable disposal field is to be built for sewerage disposal.

"4. All sides are to be of brick veneer.

"5. The parking area and driveway is to be of hardtop surface.

"6. Parking area is to be lighted by lights not higher than 3′ above the ground.

"7. The roof is to be of Hip design.

"8. A semicircle portico with an ornamental rail on the roof is to be erected at the front door."

In reaching their decision the board made certain findings, pertinent among which are the following:

"The Board finds the land which is the subject of this application to be very irregular in its topography, with a great difference between the height at the front and rear, with many areas of deep depression and with a great many boulders and rocks throughout the lot. "* * *

"The Board further finds from the testimony of Nicholas Caldarone, Realtor, and from that of the applicant, Carmine J. Bonitati, a Contractor, that the cost of development of this lot for residential use would be prohibitive."

They gave as their reasons:

"1. The Board finds that the granting of said variance in the terms of the Zoning Ordinance of the City of Cranston will not be contrary to the public interest.

"2. That special conditions of topography and location of this lot will result in unnecessary hardship to the applicant and owner if the provisions of the Zoning Ordinance are literally enforced.

"3. That with the granting of this use the spirit of the Ordinance will be observed and justice will be done."

The petitioners contend, inter alia, that the board abused their discretion and acted arbitrarily by granting a variance pursuant to sec. 27C for the reason that there was no legal evidence to support their decision. In the view we take of this contention it is unnecessary to consider any other.

Although it is well settled that ordinarily we will not weigh the evidence, *Hazen* v. *Zoning Board of Review,* 90 R. I. 108, 155 A.2d 333, it is equally well settled that we will examine the record to determine whether any legal evidence exists to support the board's decision. Such an examination necessarily entails a determination of whether the evidence relied on by the board is sufficient in law to support a finding that a literal compliance with the ordinance would be a deprivation of all beneficial use.

We have repeatedly held that the mere inconvenience or additional expense of filling a depression to bring it to grade would not of itself necessarily amount to undue hardship. *Ricci* v. *Zoning Board of Review,* 72 R. I. 58; *Franco* v. *Zoning Board of Review,* 90 R. I. 210, 156 A.2d 914.

The only evidence in the instant case on which the board purports to or indeed could rely is that relating to the topography of applicant's property and the testimony of Nicholas Caldarone, the real estate expert, and the applicant, a professional builder. Counsel for the board argues that their testimony clearly falls within the decision of this court in *Franco* v. *Zoning Board of Review, supra.* There we held that expert testimony that the property was not adaptable to a residential use because of the expense involved in filling it in was insufficient in the absence of a showing that the expense was so prohibitive as to constitute a hardship. They contend that in the instant case such expense was made evident so as to justify their finding that the cost was prohibitive.

The board misconceives the import of the *Franco* decision. Unless it can be shown that the expense or cost of fill, grading, etc., however great, is prohibitive because it results in taking the property out of the market for residential purposes, such expense does not constitute unnecessary hardship. There is no showing in the record before us as to how many 8,000 square-foot lots would result from the expenditure of $30,000, or the selling price of such lots in the district wherein applicant's property is located.

In *School Committee* v. *Zoning Board of Review*, 86 R. I. 131, the record disclosed that the property in question zoned residential B, and for which a variance was granted to permit a business use, consisted of 70,000 square feet, had been purchased for $65,000, and was surrounded by two schools as well as industrial and commercial property. Indeed the evidence was that the area was but 7 per cent residential. On that record this court held in effect that the zoning board had not abused its discretion in concluding that to refuse the application would constitute an undue hardship. See also *Bergson Co.* v. *Zoning Board of Review*, 92 R. I. 226, 167 A.2d 844. In the instant case,

however, the record falls short of the standards approved by this court in those cases.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the records in the case which have been certified to this court are ordered sent back to the board with our decision endorsed thereon.

*Alfred J. Gemma, Eugene Liberati* for petitioners.

*Charles A. Kelley,* City Solicitor, *Abraham Goldstein, Richard M. Casparian,* Assistant City Solicitors for respondent.