205 A.2d 363.

BONITATI BROS., INC. *vs.* ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON.

DECEMBER 15, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Paolino, J.   This is a petition for a writ of certiorari to review the respondent board's decision denying the petitioner's application for an exception or variance for the construction of an apartment house in a dwelling-house district.   Pursuant to the writ the board has certified the pertinent records to this court.

A consideration of the issues raised in this case requires a reference to an earlier case, *Gemma* v. *Zoning Board of Review,* 93 R. I. 440, 176 A.2d 722, in which the board and this court passed upon questions involving substantially the same parcel which is the subject of the present inquiry.

The land involved in *Gemma* measured 115 feet on Oaklawn avenue and 225 feet on Dean street and was owned by Carmine J. Bonitati and his brother Roland.   Since the decision in *Gemma* that land and another piece contiguous thereto have been conveyed to the petitioner in this case, a corporation owned and operated by the brothers.   The land involved in the case at bar measures 115 feet on Oak-

lawn avenue, 300 feet on Dean street, and has a total area of 34,500 square feet.

Reference is hereby made to the *Gemma* case for descriptions of the location, shape, and topography of petitioner's land and surrounding properties, and also of the proposed apartment and its proposed location. In the circumstances we need only repeat that the land is in a dwelling-house A district which is restricted to one and two-family residences requiring a minimum of 8,000 square feet per family.

On March 14, 1961 the board granted the applicant Carmine J. Bonitati a variance permitting the construction of the proposed apartment, subject to specified conditions. On the basis of the record before them they found that "the cost of development of this lot for residential use would be prohibitive"; that the proposed use would not be contrary to the public interest; that a denial of the same would result in unnecessary hardship; and that "with the granting of this use the spirit of the Ordinance will be observed and justice will be done."

In *Gemma* we said: "Unless it can be shown that the expense or cost of fill, grading, etc., however great, is prohibitive because it results in taking the property out of the market for residential purposes, such expense does not constitute unnecessary hardship. There is no showing in the record before us as to how many 8,000 square-foot lots would result from the expenditure of $30,000, or the selling price of such lots in the district wherein applicant's property is located." In the same case, after referring to *School Committee* v. *Zoning Board of Review*, 86 R. I. 131, and *Bergson Co.* v. *Zoning Board of Review*, 92 R. I. 226, we added: "In the instant case, however, the record falls short of the standards approved by this court in those cases."

We now come to a consideration of the case at bar. The petitioner is seeking a special exception under 27B or a variance under 27C of the local ordinance. In the posture

of this case the first question before us is to determine whether petitioner has supplied the missing link referred to in *Gemma, supra,* and whether it has met the standards approved by this court in *School Committee, supra,* and in *Bergson Co., supra.*

Under point 1 of its brief and argument petitioner contends that the board abused their discretion in denying its application for a variance. It argues in substance that it has supplied the evidence which was missing in *Gemma, supra;* that it has met the standards approved by this court in *School Committee, supra,* and in *Bergson Co., supra,* by presenting unimpeached and uncontradicted evidence that the minimum cost of filling and grading the land in order to make it usable for residential purposes is prohibitive; that such cost results in taking the property out of the market for residential purposes; and that in the circumstances petitioner is deprived of all beneficial use of its property and thus suffers unnecessary hardship.

The following evidence is uncontradicted. The land in question can be divided into four lots, each having an area of not less than 8,000 square feet. The first of these lots would front 75 feet on Dean street and 115 feet on Oaklawn avenue. The other lots would each have a frontage of 75 feet on Dean street and a depth of 115 feet.

Carmine Bonitati testified that the cost of the land in its present condition was $6,800; that on the basis of estimates made by Daniel J. DiCenzo, a qualified civil engineer, it would cost an additional $27,000 to clear the land and supply fill necessary to grade it to the level of Dean street; that this would amount to 78 cents per square foot, without taking into consideration the present cost of the land; and that this cost was prohibitive.

Mr. DiCenzo corroborated Mr. Bonitati's testimony as to cost. He also testified that by eliminating a 135-foot retaining wall and by reducing the fill by 10 per cent, the

minimum cost for developing this land to make it usable for residential purposes would be $20,000 or 60 cents per square foot, without taking into consideration the value of the land in its present condition. He also prepared a topographic survey showing existing elevations of land. This survey is in the record.

Peter A. Laudati, Jr., was called as an expert witness by petitioner. His qualifications as a real estate expert, appraiser and developer of real estate were admitted. He testified that in his opinion the value of the land in its present condition was between $3,500 and $4,000; that the basic value was in the front 75 feet; and that the remaining or rear 225 feet economically had no value. The substance of Mr. Laudati's testimony is that the cost of developing this land for residential purposes would be so prohibitive that it would be forced out of the residential market.

He testified that if the land were developed and made usable for residential purposes he would appraise it at $10,-700 if it were divided and sold as four lots, and at $10,350 if it were to be sold as one parcel. He further testified that if filled and leveled and usable from Dean street it would bring in an average price of 30 cents per square foot and that in his opinion it could not be sold for 50 cents per square foot.

The board also heard the testimony of two remonstrants and the statement of counsel representing other objectors. The substance of their testimony related to traffic problems and the general character of the surrounding area. No evidence was presented contradicting the testimony presented by petitioner and its witnesses relating to the cost of developing the land for residential purposes and the value of such land as residential property.

Thereafter the board denied the application. On the view we take we find it necessary to refer only to those portions of the board's decision relating to their denial of petition-

er's application for a variance. In their decision the board stated that they took a view of the premises and the surrounding neighborhood; that they gave careful consideration to all of the testimony and evidence presented at the hearing; and that they considered their previous decision filed on March 14, 1961 and our decision in *Gemma, supra.*

Paragraph (7) of the board's decision reads as follows:

"Testimony was received by the Board concerning the suitability of these premises for the permitted uses in a Dwelling A district; i.e., single and two-family houses, with not less than 8,000 sq/ft/of land for each family accommodated and the cost of subdividing the premises into four lots, each consisting of approximately 8,000 sq. ft., upon which single family homes would be constructed. The expense of fill and grading was considered by the Board, as well as the selling price of the resulting lots. The Board considered the relative amounts of fill required (a) to bring the grade to the Dean Street grade; (b) to bring the grade to the grade of the adjacent lot to the north, Lot #1338; and (c) to bring the grade to a gently sloping grade from the rear to Oaklawn Avenue, suitable for home building. The Board is of the opinion that the cost of fill and grading necessary to enable the premises to be sold for the uses permitted in the Dwelling A district would not be prohibitive; such cost, together with the cost of the land itself, would be in proper relationship to the expected selling prices of the lots developed. Development of the premises may or may not be as profitable as the petitioner desires, but it would not deprive petitioner of all beneficial use of its land, constituting a legal hardship under the enabling act and the zoning ordinance."

In our opinion there is no evidence in the record to support the board's finding that the cost of fill and grading necessary to enable the premises to be sold for the uses permitted in the dwelling-house A district would not be prohibitive, and that such cost, together with the cost of the land itself, would be in proper relationship to the ex-

pected selling prices of the lots developed. The board stated that they considered the expense of fill and grading and the relative amounts of fill required to develop the land for residential purposes, as well as the selling price of the resulting lots, but there is nothing in their decision or in the record indicating that they possessed the expertise or peculiar knowledge necessary to estimate the amount of fill required, the cost thereof, or the value of the resulting lot or lots.

It is true, as this court said in *Kelly* v. *Zoning Board of Review*, 94 R. I. 298, 180 A.2d 319, 322, "that a board of review is presumed to have a special knowledge of matters that are peculiarly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of a zoning ordinance." It does not follow, however, that board members are presumed to be qualified as experts in any trade, occupation or profession even though these may relate to the use of land. Opinions of board members as to such matters as the cost of construction of a building, the cost of preparation of site for building, or the suitability of particular construction methods are not, in our opinion, matters so related to the administration of a zoning ordinance as to come within the presumptive expertise of a board of review to which reference is made in *Kelly* v. *Zoning Board of Review, supra.*

It is clear that in the case at bar the board did not accept the uncontradicted and unimpeached testimony of petitioner's expert witnesses that the cost of developing its land was prohibitive and resulted in taking the property out of the market for residential purposes. On the other hand, as we have previously stated, there is no evidence to support the board's finding that the cost of fill and grading necessary to develop the land for residential purposes is not prohibitive. In the circumstances it is our opinion

that the board abused their discretion in making this finding.

In *Gemma, supra,* we did not pass upon the board's findings that the proposed use would not be contrary to the public interest and that the spirit of the ordinance would be observed and substantial justice done by granting the application. In the case at bar the board has made findings that the proposed use would be contrary to the public interest and that the spirit of the ordinance would not be observed nor substantial justice done by granting this application. Thus such findings are completely inconsistent with those in their decision in *Gemma, supra.*

We find no material change in circumstances in the interval between the decision of March 14, 1961 and the board's decision of March 21, 1963. With respect to these findings it is our opinion that the rationale of the court in *Churchill* v. *Zoning Board of Review,* 98 R. I. 302, 201 A.2d 480, and *Day* v. *Zoning Board of Review,* 92 R. I. 136, applies to the case at bar. The fact that the applicants and the area of land in the two applications differ is of no material significance. In our opinion the board abused their discretion in making these findings.

On the basis of the present record it is our opinion that the petitioner has proven by competent, unimpeached and uncontradicted evidence that it is entitled to relief on the ground of unnecessary hardship.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the records in the case which have been certified to this court are ordered sent back to the board with our decision endorsed thereon.

*Benedetto A. Cerilli, Charles A. Pisaturo,* for petitioner.

*Christopher T. DelSesto, Jr.,* Assistant City Solicitor, for respondent.