DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review (Board) of the City of Cranston granting the petition of the defendant, The Benz, LLC., (The Benz), for dimensional variances from the Zoning Code of the City of Cranston § 30-28 — variances, § 30-17 — schedule of intensity, § 30-18(p) — off street parking, and § 30-23 — structural alterations. The plaintiffs, Edward and Anita Altomari (Altomaris or Plaintiffs), as owners of the Rhode Island Appliance Center (R.I. Appliance) seek reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS/TRAVEL
Thomas Lonardo (Lonardo), through his corporation, The Benz, LLC (The Benz), is the sole occupant and owner of an existing legal non-conforming structure located at 80 Atwood Avenue and known as Lot 986 on Assessors Plat 11-3 in the land evidence records of the City of Cranston. On January 16, 2001, Lonardo filed an application for exception or variation from the Zoning Code of the City of Cranston § 30-28 — variances, § 30-17 — schedule of intensity, § 30-18(p) — off street parking, and § 30-23 — structural alterations. The purpose of this application for dimensional variances from those ordinances was Lonardo's desire to construct a 51' x 29' two-story addition on the property, effectively tripling the size of the original structure, a 736 square foot office building.
Subsequently, Lonardo filed a pre-application plan for the proposed addition with the City of Cranston Site Plan Review Committee (SPRC). On March 21, 2001, the SPRC unanimously voted to approve Lonardo's preliminary application subject to several conditions, two of which are relevant to this matter: (1) Lonardo's acquisition of a contiguous lot owned by the State of Rhode Island which would provide him with six additional parking spaces,[1] and (2) the Board's grant of dimensional variances for setbacks and off street parking.
On June 13 and July 11, 2001, the Board held public hearings regarding the requested variances. At both hearings, counsel representing Lonardo, indicated that her client desired to add on to the existing building at 80 Atwood Avenue. The unimproved building, a nonconforming structure situated in a C-2 neighborhood/business district, housed Lonardo's architectural firm which, in addition to being a permitted use, counsel maintained, was rapidly growing.
Lonardo maintained he found it progressively harder to adequately conduct his architectural business activities within the confines of a 736 square foot office building.
Quite simply, Lonardo maintained that the office was neither physically large enough to accommodate the examination of large scale blue prints nor had sufficient office space where he could conduct private conferences with clients. At the same hearings, the plaintiffs voiced their opposition to the proposed addition. The plaintiffs contend that the addition would be so large as to block the view of their business, situated slightly behind Lonardo's property, from the view of approaching traffic on Atwood Avenue. Additionally, plaintiffs maintained that even if Lonardo did acquire the adjacent lot, he would still lack the proper number of spaces required by the ordinance, potentially causing patrons to park on nearby streets.
After hearing extended arguments from both sides, as well as testimony from several witnesses, the Board on July 11, 2001 granted Lonardo's requested relief on the condition that he (1) acquire the adjacent property from the State, (2) provide a minimum of fifteen parking spaces, and (3) acquire a physical alteration permit from the State of Rhode Island Department of Transportation. On July 18, 2001, the Board's decision was publicly posted. On August 6, 2001, the plaintiffs timely filed their appeal.
The plaintiffs essentially argue four points. The plaintiffs submit that Lonardo failed to present the Board with sufficient evidence of a hardship to necessitate the granting of the variances, and the Board did not make sufficient findings of fact to warrant such a decision. Additionally, plaintiffs contend that the Board violated the City's Site Plan Review Ordinance by prematurely considering Lonardo's application and violated the plaintiffs' rights by preventing full cross-examination of adversarial witnesses at the hearings.
 STANDARD OF REVIEW
Aggrieved parties may appeal a decision of the Board to this Court pursuant to G.L. 1956 § 45-24-69. This section provides that the Court's review of the decision:
(c) shall be conducted . . . without a jury. The court shall consider the record of the hearing before the zoning board of review . . . (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: (1) In violation of constitutional, statutory, or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or; (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. G.L. 1956 § 45-24-69.
Essentially, the reviewing court gives deference to the decision of the zoning board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances, and the decision of which must be supported by legally competent evidence.Monforte v. Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962); see, Braun v. Zoning Bd. of Review of SouthKingstown, 99 R.I. 105, 206 A.2d 96 (1965) (defining competent evidence as that presumed to be possessed by members of such boards). This deference, however, must not rise to the level of "blind allegiance."Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985). The court conducts a de novo review of questions of law; thus the Court may remand the case for further proceedings or potentially vacate the decision of the zoning board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." VonBernuth v. Zoning Bd. of Review, 770 A.2d 396, 399 (R.I. 2001); G.L. 1956 § 45-24-69(d)(5).
 JURISDICTION
The plaintiffs argue that the request for dimensional variances was not properly before the Board because even though the SPRC had issued a certificate of completeness pursuant to §§ 30-18(u)(3)(a) and 30-18(u)(6)(d) of the Zoning Code of the City of Cranston, the applicant's preliminary site plan was not approved by the SPRC, and thus was before the Board prematurely. Section 30-18(u)(3)(a), entitled "site plan review-coordination with zoning board of review," reads
"The site plan review process (if otherwise applicable) must take place prior to consideration of a variance, application to the zoning board of review (ZBR) for a special permit. The ZBR shall not consider an application for a special permit until the applicant has received a certificate of completeness from the SPR committee . . . . The findings of the SPR committee shall be considered by the zoning board of review in its decision of the matter before it. In the event of a variance, the decision and findings of the SPR committee are advisory only to the zoning board of review." (Emphasis added.)
Section 30-18(u)(6)(d), entitled "certificate of completeness," states that "[u]pon filing a complete application for site plan review, the applicant shall receive a certificate of completeness . . . ." Taken together, the plaintiffs contend, these two zoning provisions stand for the proposition that the site plan review process must be complete prior to the issuance of both a certificate of completeness and consideration by the Board of an application for dimensional variances.
Additionally, the plaintiffs argue that the Board's consideration of Lonardo's variance application, before preliminary site plan approval, runs counter to the Zoning Code of the City of Cranston § 30-18(u)(1)(a), entitled, "Purpose," which reads: "The purpose of this subsection is to establish procedures pursuant to the permitting process which will enable the city to perform a comprehensive review of certain proposed developments" and describes a number of general considerations for the orderly growth of the city which the site plan review process is intended to ensure.
With respect to § 30-18(u)(1)(a), the Board found that the language contained therein means that the site plan process invites the input that a zoning board might provide with respect to a proposed development; an interpretation supported by the general principle that "the purpose of both site plan review and approval is to provide for a detailed analysis of the physical characteristics of a particular development project." Arden Rathkopf and Daren Rathkopf, The Law of Zoning and Planning
§ 30.03 (4th ed. 1998). Section 30-18(u)(3)(a) merely requires that the site plan review process take place prior to consideration of a variance and that the applicant present the Board with a certificate of completeness showing that his/her site plan application is complete; there is no requirement that the entire site plan review process be completed. (Emphasis added). To read the ordinance so narrowly would deprive the SPRC of the often crucial Board feedback on a proposed land use project.
The record reflects that, Mr. Kevin Flynn (Mr. Flynn), Chairman of the SPRC, testified that it is standard procedure for the SPRC to await Board approval of variances, in certain cases, before preliminarily approving a site plan. Tr. of July 11, 2001 at 9. In his view, such practices are consistent with the intent of § 30-18 et seq. See Bonatati Bros.,Inc., v. Zoning Bd. of Review of the City of Cranston, 99 R.I. 49, 55,205 A.2d 363, 366 (1964) (holding that "a board of review is presumed to have a special knowledge of matters that are peculiarly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of a zoning ordinance"). Furthermore, in its July 11, 2001 decision, the Board, in agreeing with Mr. Flynn's interpretation of the site plan review ordinances, stated that "input from the public and the Zoning Board prior to development of a plan would promote the [intent of the ordinance]." Decision of the Zoning Board ofthe City of Cranston at 4. Consequently, this Court finds that the Board's consideration of Lonardo's application for dimensional variances, despite the lack of final approval of the site plan by the SPRC, was not in excess of their jurisdiction or in violation of the ordinance provision.
 CROSS-EXAMINATION
The plaintiffs argue that the Board violated their rights by disallowing or severely limiting their right to cross-examine adverse witnesses at the hearings, while simultaneously allowing the adverse party to cross-examine adverse witnesses freely. It is well-settled that parties before a zoning board do not have a right to cross-examine adverse witnesses, despite our State Supreme Court's noting that the practice be allowed under appropriate circumstances. Colagiovanni v. Zoning Bd. ofReview of the City of Providence, 90 R.I. 329, 158 A.2d 353 (1968);Westminister Corp., v. Zoning Bd. of Review of the City of Providence,103 R.I. 381, 394, 238 A.2d 353, 360 (1968) (holding that "some reasonable cross-examination" should be permitted by quasi-judicial boards). (Emphasis added.)
In the present case, the Board, at the June 13, 2001 hearing allowed the plaintiffs' counsel to cross-examine Lonardo, noting that such leeway is not customary. Tr. of June 13, 2001 at 37-38. Shortly thereafter, however, the plaintiffs' counsel apparently posed objectionable questions to Lonardo, as the latter's counsel quickly launched a salvo of objections. Id. at 40-44. Essentially, the cross-examination of Lonardo degenerated to the point where each counsel argued that since the Board was allowing such questioning tactics, each respective counsel should have been allowed to either zealously question or zealously object on behalf of his or her clients as if the lawyers were in an actual courtroom; to which the Board replied "this is why in the past we have not allowed this type of cross-examination . . . ." Id. at 42. In an effort to accommodate both sides, yet speed the proceedings along, the Board decided to allow each respective counsel to tersely voice their objections to questionable interrogatories, without any excess dialogue. Id. at 44. As the cross-examination of Lonardo continued, the plaintiffs' counsel overstepped the limited leeway that the Board had granted. Id at 47-50. The Board had previously admonished the respective parties' counsel to "get to the heart of [the matter] and go forward." However, the record reflects that the protracted cross-examination of Lonardo was far from complete when an exasperated Board member finally declared that two additional questions by the plaintiffs' counsel were "too many." Id. at 50.
The record demonstrates that the Board attempted to provide both sides with a reasonable opportunity to cross-examine adverse witnesses, yet the conduct of both parties' counsel unduly elongated what should have been a relatively short hearing. Consistent with their authority, seeColagiovanni and Westminister, the Board limited the plaintiffs' counsel's cross-examination of Lonardo in an effort to close up the proceeding. Accordingly, this Court finds that the Board did not prejudice the rights of the plaintiffs by limiting their cross-examination of Lonardo.
 NONCONFORMING USE
The nature of the proprietary interest for which a variance is sought is material to the request for relief. Specifically, if the property is nonconforming, it must be determined whether the use or the actual dimensions of the property do or do not comply with the applicable zoning requirements. Thus, "[t]here is good reason for the distinction between use and area variances . . . . When the variance is one of area only, there is no change in the character of the zoned district and the neighborhood considerations are not as strong as in a use variance." Rathkopf at § 38.04[2] (quoting Hoffman v. Harris, 17 N.Y.2d 138,216 N.E.2d 326, 269 N.Y.S.2d 119 (1966)). Accordingly, the burden of proof for area variances is less demanding or onerous than that for use variances. Id. The Rhode Island Zoning Enabling Act requires that cities and towns that wish to allow alterations of area nonconformities do so by ordinance, either through a special use permit or as of right. G.L. 1956 § 45-24-40(a)(1),(2). Accordingly, the Zoning Code of the City of Cranston § 30-23 — structural alterations, provides, "A nonconforming building, excepting churches and other buildings used in connection with religious or educational activities, may not be reconstructed or structurally altered during its life unless such building is changed to a conforming use."
In the context of business expansion, it is generally recognized that "[a]n increase in the volume of trade or business conducted as a nonconforming use or other intensification of the use is generally held to be permissible so long as the basic nature and character of the use is unchanged from that which existed at the time the use or structure became nonconforming." Rathkopf, supra, § 51.07[2]. Thus, jurisdictions recognizing the doctrine of natural business expansion have required that the intensification in either use or structure must be reasonable and not adversely impact the surrounding community. (Emphasis added). BlanarikAppeal, 375 Pa. 209, 211-212, 100 A.2d 58, 59 (1953) (holding that denying a business owner's 10' x 58' structural expansion to accommodate an increase in business was arbitrary and an abuse of discretion where expansion was neither excessive nor contrary to public interest).
In the case at bar, while the Board, pursuant to the Zoning Code of the City of Cranston Ordinances §§ 30-23 and 30-28, may extend nonconforming structures through the grant of a variance, such an extension must be reasonable and must not be detrimental to the surrounding area. Unlike the modest relief at issue in Blanarik,
Lonardo's extensive addition cannot be characterized as reasonable business expansion. For example, not only was his proposal to triple the size of the existing structure excessive, but also, the potential adverse effects on the surrounding area are contrary to the natural business expansion doctrine. As Mr. J. Clifden O'Reilly, Jr., (Mr. O'Reilly) a real estate expert testifying before the Board, noted, if Lonardo were to sell the subject property to a museum or a nursing home, both permitted C-2 uses arguably attracting heavy comings and goings, the increased traffic could have a negative effect on the surrounding residential area. Tr. of July 11, 2001 at 31-32. Specifically, he stated "[t]he way I look at it, with a big addition on and the total lack of parking, if any of these other uses are subsequent owners of this property, it could adversely affect particularly your client to the rear (i.e., the plaintiffs)." Id. at 31. Thus, any future purchaser with a permitted use in a C-2 zone would not need to seek Board approval before purchasing the subject property and would be required to provide no more parking than Lonardo did. Accordingly, this Court finds that the Board's decision to grant Lonardo's petition, based in part on a business need for expansion, constituted an abuse of discretion.
 THE DIMENSIONAL VARIANCES
Under traditional zoning principles, it is axiomatic that applicants for variances must establish that their land is so uniquely affected that they experience an unnecessary hardship. Yoakley's Zoning Law andPractice § 21-6 (1979) 2001 Cum-Supp. Likewise, at the time of the hearing, the Rhode Island Zoning Enabling Act provided that the applicant seeking relief from zoning restrictions bears the burden of proof as to why such relief is warranted. SNET Cellular, Inc. v. Angell,99 F. Supp.2d 190 (D.R.I. 2000) (under Rhode Island law, the petitioner bears the burden of demonstrating that a special use permit or variance should be granted). Specifically, when applying for dimensional variances, the applicant needed to demonstrate to the zoning board of review
(c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant . . .
(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
(4) That the relief to be granted is the least relief necessary.
***
(d)(2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. G.L. 1956 § 45-24-41.
Recently, our State Supreme Court clarified the standard that §45-24-41 requires of applicants for dimensional variances. The applicant must demonstrate that "no other reasonable alternative" exists for the enjoyment of a property's legally permitted use. Sciacca v. Caruso,769 A.2d 578, 583 (R.I. 2001).[2] Thus, a dimensional variance is "warranted when a petitioner is precluded from the full enjoyment of the use of his property for permitted purposes by an insistence upon a literal enforcement of area restrictions." Sun Oil Co. v. Zoning Bd. ofReview of the City of Warwick, 105 R.I. 231, 234, 251 A.2d 167, 169 (1969).
Application of § 45-24-41(c)(1)
Lonardo's burden, pursuant to G.L. 1956 § 45-24-41(c)(1), was to demonstrate that the hardship for which relief was sought was due to the unique characteristics of the subject structure or lot and not to a physical or economic disability attributable to him. Lonardo argues that his architectural business was prevented from growing without the proposed addition. Furthermore, he maintains that his current business obligations were hampered by the small size of his existing structure. In his testimony before the Board, he stated, "what we're looking to do is give ourselves a little more elbow room to accommodate our present business profile . . . presently, right now, we're working on five schools. We just completed [the] Cranston High School West addition . . . and we have five schools in Woonsocket that we're working on." (Tr. of June 13, 2001 at 15-16.)
Although Lonardo did present the Board with sufficient evidence of a hardship due to the unique characteristics of the structure — namely, its small size — there is no evidence in the record that the economic disability he complains of was not due to his own desire to realize greater financial gain. Although one Board member stated that the relief "wasn't really to add or increase work," but rather to allow him (Lonardo) "to be able to function better . . . ," the record reflects that it was Lonardo's intention to increase his workload significantly" (Tr. of July 11, 2001 at 57); indeed, when asked whether he anticipated realizing greater financial gain from the addition, Lonardo responded in the affirmative. (Tr. of June 13, 2001 at 50.) Accordingly, the Board's finding that Lonardo did not want the addition for expansion, but merely to overcome space constraints, is not supported by the reliable, probative and substantial evidence of record.
Section 45-24-41(c)(2)
This prong of the dimensional variance standard requires Lonardo to demonstrate that the hardship from which relief is sought is not the result of any prior action attributable to him and/or does not result primarily from his desire to realize greater financial gain. Since the record demonstrates that Lonardo did envision realizing greater financial gain from the proposed addition the Board's finding that Lonardo did not intend to profit financially if the variances were granted is not supported by the reliable, probative and substantial evidence of record.
Section 45-24-41(c)(3)
Pursuant to this subsection, Lonardo must demonstrate that the requested relief will not alter the general character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan. In the instant matter, the record reflects that Lonardo did not overcome this burden. Despite his potential acquisition of the contiguous State owned lot (which is uncertain at this stage), Lonardo still would not have the required twenty-five on site parking spaces. See supra note 1. As Mr. O'Reilly noted in his testimony before the Board, the potential for increased traffic congestion and future parking difficulties could adversely affect the surrounding neighborhood. (Tr. at 31); see discussion supra pp. 10-11.
However, the Board's finding, that the lack of parking spaces, even with the acquisition of the contiguous lot, would not constitute a problem because Lonardo's intensity of use was not significant enough to pose difficulties for the surrounding area, ignored these potential difficulties of record. Accordingly, the Board's finding that the parking shortage would not alter the general character of the immediate area is not supported by the reliable, probative and substantial evidence of record.
Sections 45-24-41(c)(4) and 45-24-41(d)(2)
These subsections simply require that Lonardo request the least relief necessary from the Board, and that he demonstrate that the hardship from which relief is sought amounts to more than a mere inconvenience, meaning that he had no other reasonable alternative than to seek the requested relief. Again, the record demonstrates that he has not satisfied his burden of proof with regard to these elements. Other than indicating that the size of the unimproved structure financially hampered his current business, the record shows that Lonardo did not present the Board with any evidence that he had no other alternative than to effectively triple its size. Furthermore, the record indicates that the Board failed to examine whether a smaller addition to the existing structure might satisfy his business needs. The Board did, however, have before it the expert testimony of Mr. O'Reilly that the existing structure could indeed be rearranged or made smaller. Id. at 37. Thus, the Board's finding that Lonardo did request the least relief necessary and did explore other less feasible alternatives is not supported by the reliable, probative and substantial evidence of record.
CONCLUSION
The Board's conclusion that the potential acquisition of the contiguous lot might alleviate the intensity concerns (present or future), that the applicant sought the least relief necessary, and that the relief sought was not motivated by desires for financial gain is not supported by the substantial evidence of record. (Emphasis added.) After reviewing the entire record, this Court finds that the Board's decision was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record and constituted an abuse of discretion. Accordingly, this Court reverses the July 11, 2001 decision of the Board.
Counsel shall submit the appropriate judgment for entry.
[1] City of Cranston Ordinance § 30-18(p)(9)(o) requires Lonardo to provide a minimum of twenty-five off street parking spaces. The acquisition of the contiguous lot, in addition to Lonardo's current nine parking spaces, would give him fifteen spaces.
[2] At the time of the hearing, the applicable zoning provision, G.L. 1956 § 45-24-41 required that the applicant demonstrate that "no other reasonable alternative" exists for the enjoyment of a legally permitted use before a variance is properly issued. On June 28, 2002, however, our State General Assembly repealed that portion of the Enabling Act so that applicants for dimensional relief need only demonstrate that the hardship complained of amounts to "more than a mere inconvenience" — otherwise known as the "Viti Standard." Thus, the higher standard required of variance applicants in Sciacca has been superseded by the June 28, 2002 legislative act.