DECISION
Before this Court is the appeal of John J. Perrotti ("Appellant") of a decision by the Zoning Board of Review of the Town of Jamestown ("the Board"), denying him a special use permit. The Board's written decision, dated April 25, 2007, was filed on June 5, 2007. Appellant filed a timely appeal to this Court on June 21, 2007. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The Appellant owned two adjacent lots, both comprising 7200 square feet, on Ship Street in the "Jamestown Shores" section of Jamestown. By title, the Appellant merged the two lots into one 14,400 square foot parcel. The combined lot is a legal nonconforming parcel of record located in an R-40 zoning district, a residential zone requiring a minimum 40,000 square foot lot to build a single family home.
On his property, Appellant seeks to build a three-bedroom home with an attached two-car garage, an individual sewage disposal system ("ISDS"), and a gravel driveway. Because Appellant's property is located in an area subject to the Town of Jamestown Zoning Ordinance Article 3, § 82-314, "High Groundwater Table and Impervious Layer Overlay District," to build *Page 2 
as he desires, Appellant must receive a special use permit pursuant to that section and to Article 6, § 82-600 and § 82-602, which provide the general criteria for special use permits.
In 2004, Appellant first submitted an application for his proposed development to the Jamestown Planning Commission for an advisory opinion. The November 1, 2006 minutes of the Planning Commission's hearing demonstrate that it issued a negative advisory opinion, concluding merely that the proposal did not represent "minimum impact" to the property. (Appellant's Ex. 2.) Appellant then applied to the Town of Jamestown Zoning Board of Review for a special use permit.
On March 27 and April 24, 2007, the Zoning Board of Review held duly noticed public hearings on Appellant's application. At the March 27 hearing, Appellant presented two registered professional engineers, Craig R. Carrigan and Michael Zavalia. The Board accepted Mr. Carrigan as an expert in civil engineering and waste water design and Mr. Zavalia as an expert in storm water management. The purpose of both witnesses' testimony was to address the requirements of § 82-314.
Because § 82-314 mandates certain criteria regarding a proposed ISDS, Mr. Carrigan, who was employed by the Appellant to design an ISDS for the property, testified as to the details of the subject ISDS proposal and his expert opinion that it complied with the ordinance. First, Mr. Carrigan noted the ordinance's requirement that for a lot the size of the subject property, four test holes for soil evaluations, two of them within ten feet of the proposed ISDS and one within the proposed building foundation, must be scheduled with the Department of Environmental Management ("DEM"), for a "suitability determination." (See § 82-314; Tr. 3/27/07 at 9-10.) Mr. Carrigan testified that twelve such holes were made. (Tr. 3/27/07 at 10.) In addition, Mr. Carrigan noted that the DEM had approved of the proposed ISDS, as required by *Page 3 
the ordinance, and a copy of that approval was entered into the record. (See § 82-314(B)(2), (3) (C); Tr. 3/27/07 at 10-12; Appellant's Ex. 4.)
Subsequently, Mr. Carrigan testified that the proposed ISDS met the additional requirements of § 82-314.[1] (Tr. 3/27/07 at 19-21, 26.) In addition, he stated that a precondition to DEM approval is that the property owner enter into a maintenance contract with a licensed individual to conduct regular inspections of the ISDS. Id. at 25. In his professional opinion, Mr. Carrigan concluded, the proposed ISDS would not have a "negative impact on public health or safety." Id. at 26.
Mr. Zavalia, the Board-recognized expert in storm water management, testified to the additional requirements of § 82-314, those relating to the proper drainage of storm water. The purpose of storm water management, Mr. Zavalia explained, is to create a system which causes "no net and no negative impact" to storm water patterns as they occur on a site. Id. at 39. The lesser a development's impervious surface, Mr. Zavalia testified, the lesser the negative impact to storm water patterns. Id. at 51. The proposed development here would cover 11.7% of the lot, short of the 12% maximum allowed by the ordinance. (See § 82-314; Tr. 3/27/07 at 54.)
To determine the impact of the proposed development on storm water patterns, Mr. Zavalia performed a mathematical analysis of those patterns as they occurred on Appellant's property before development and as they would occur after the proposed construction. (Tr. 3/27/07 at 39-40.) This analysis was done according to the Town of Jamestown's mandated *Page 4 
method, called the "rational method." Id. at 40. The net difference in runoff figures between the pre-development and post-development figures is water that must be mitigated; that is, somehow kept from running off onto adjacent properties. Id. at 43.
To keep water runoff on site, Mr. Zavalia proposed a drainage system according to a plan based on what engineers term "best management practices." Id. at 45. First, Mr. Zavalia would rely on the "bowl"[2]
shape of the property to "collect and infiltrate storm water from the site." Id. at 47. Second, water runoff from the roof of the proposed home would collect in gutters and downspouts and be diffused into large, bottomless subterranean tanks. Id. at 47-48. Third, the proposed driveway would be made of gravel, a pervious surface which would allow rainwater to enter the ground below. Id. at 49. Fourth, a "versa-lok" retaining wall would catch water from the front of the property and direct it into a "grass swale," a natural depression which would then channel water into the infiltration basin — the "bowl." Id. at 52-53. According to both the testimony of Mr. Carrigan and Mr. Zavalia, this "grass swale" would not interfere with the ISDS. Id. at 64-68. Finally, the remainder of the lot, other than the home itself, will remain a lawn to maximize the pervious surface. Id. at 53. To properly grade the site, however, Mr. Zavalia testified that 470 yards of fill must be imported to the property. Id. at 74.
Mr. Zavalia concluded, based on the aforementioned "best management practices," and particularly because of the underground flow diffusers, that there will be less storm water runoff from the lot after construction of the proposed development. Id. at 55-56. Furthermore, he testified, the Town of Jamestown engineer had reviewed the plans and indicated satisfaction that they complied with local regulations.Id. at 56-57. In his expert opinion, Mr. Zavalia testified *Page 5 
that the plan complied with each of the objective criteria of § 82-314 not already addressed.[3] Id. at 57-58.
At the second hearing, which was held on April 24, 2007, the Appellant presented two more witnesses: Edward Pimental and Ned Caswell. The Board accepted both men as experts: Mr. Pimental in municipal planning and Mr. Caswell in real estate. Both witnesses' testimony was intended to demonstrate that the Appellant's proposal satisfied the general criteria for a special use permit under §§ 82-600, 82-602.
Mr. Pimental performed a survey of the subject parcel and the lots located within a 500-foot radius. His testimony, buttressed by his written report, indicated that the average lot size in the area was 15,267 square feet, with only one lot meeting the zoning ordinance's minimum of 40,000 square feet. (Tr. 4/24/07 at 10.) Further, 44% of the lots had less than 14,400 square feet (the size of Appellant's lot); 26% had less than 7,200 square feet; of those lots smaller than Appellant's, 75% already contained single-family homes; and the average lot coverage in the area was that which Appellant proposes: 11.7%. Id. at 10-15.
Mr. Pimental also systematically addressed the special use permit requirements of § 82-600, stating that each requirement will be met by the Appellant's proposed development. Id. at 17-20. His conclusion was that Appellant's plans would not be "inimical to public health, safety, morals, or welfare," as required by the ordinance. (See § 82-602; Tr. 4/24/07 at 21.)
Appellant's real estate expert, Mr. Caswell, testified that due to the conformity of Appellant's proposed single-family home to the existing neighborhood, the values of the existing properties would not be adversely affected. (Tr. 4/24/07 at 28.) Accordingly, he stated that the *Page 6 
proposal complied with § 82-602 in that it would not be "inimical to the public health, safety, morals and welfare." (See § 82-602; Tr. 4/24/07 at 28.)
After Appellant's final witness stepped down, three abutting property owners expressed their objections to the application. The first, Kate Smith, questioned whether Mr. Zavalia's storm drainage analysis was done "on-island" and whether an impact study was done beyond the subject property. (Tr. 4/24/07 at 32-33.) Further, Ms. Smith expressed doubt as to whether the proposed drainage system would actually work, and, if it did not, she asked rhetorically who would be responsible for resultant damage. Id. at 34.
The second objector, Lance Gershenoff, expressed concern that if the proposed drainage system was improperly maintained, damage could be done to neighboring properties. Id. at 36. Conversely, if the drainage system was properly maintained, and rain water was prevented from running off-site, Mr. Gershenoff was curious as to whether this would result in decreasing water levels in neighboring wells. Id. at 37.
The final objector, Pam Neville, the owner of a parcel uphill from the Appellant's lot, testified that she has experienced "water problems" in her basement. Id. at 38, 40. In addition, Ms. Neville expressed concern about the proposed ISDS's alarm. Id. at 39. Another neighbor, Ms. Neville testified, occupied a nearby property seasonally, requiring her to personally turn off the alarm when the property was vacant.Id.
At the conclusion of the testimony, the Board made the following findings of fact:
 1. Said property is located in a R40 zone and contains 14,400 sq. ft.
 2. This application meets all the required setback requirements.
 3. Testimony of experts showed that there would be a net decrease in runoff post development, as a result of the drainage plan. *Page 7 
 4. Impervious cover is 11.7%, less than the maximum of 12% but typical of the neighborhood.
 5. The Town engineer reviewed and approved of the engineering plan.
 6. Three neighbors spoke in opposition, based on fears of possible drainage problems.
 7. The proposal uses an advanced septic system design recommended by DEM.
 8. The applicant has merged two small lots to more closely conform to the R40 requirement.
(Dec. at 1-2; Tr. 4/24/07 at 41-42.)
Despite these findings, the Board voted to deny Appellant a special use permit by a vote of 3-2. Mr. Ginnerty, the Board's chairman, included in the record his reasons for opposing the application. He stated that, based on the Planning Commission's advisory opinion, the Appellant's proposal did not "represent minimum impact of the development area." (Tr. 4/24/07 at 42.) Further, although twice admitting he was "not an expert," Mr. Ginnerty stated that he did not "buy" the expert testimony regarding the storm water control plan. (Tr. 3/27/07 at 63, 64; Tr. 4/24/07 at 42, 44.) And, seemingly based on the testimony of the upland abutter, he determined that there was a "water problem" in the subject area. (Tr. 4/24/07 at 44.) In addition, Mr. Ginnerty stated that the amount of fill required for the project was "not addressed adequately," the alarm on the ISDS may be a problem, and that the proposal was otherwise "not in the best interest of the community." Id. at 43-44.
The instant appeal followed. Appellant argues that the Board rejected uncontroverted expert opinion, which demonstrated that the objective criteria of the zoning ordinance were satisfied, relying instead on nonprobative lay opinion. Thus, Appellant avers, the decision was arbitrary, capricious, characterized by an abuse of discretion, and clearly erroneous in view of *Page 8 
the reliable, probative, and substantial evidence of the whole record. Appellant also asks for reasonable litigation expenses pursuant to the Equal Access to Justice Act, G.L. § 42-92-1 et seq.
 II Standard of Review
The standard by which the Superior Court reviews a zoning board's decision is codified in G.L. 1956 § 45-24-69(d):
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Although this Court will "not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact," the Court must examine "the entire record to determine whether `substantial' evidence exists to support the board's findings."Curran v. Church Cmty. Hous. Corp., 672 A.2d 453, 454 (R.I. 1996);DeStefano v. Zoning Bd. of Review of the City of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979) (citations *Page 9 
omitted). "`Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla, but less than a preponderance.'" Lischio v. Zoning Bd. of Review of the Town of N.Kingston, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Conclusional or insufficient evidence warrants the reversal of a zoning board's decision. Hopf v. Bd. of Review of the City of Newport, 102 R.I. 275,230 A.2d 420 (1967).
 III Analysis
As noted, the Town of Jamestown Zoning Ordinance required the Appellant to secure a special use permit to construct his proposed development in the subject area. See §§ 82-314, 82-600, 82-602. An applicant seeking a special use permit must satisfy the rules and standards provided in the ordinances permitting such relief. See SeaView Cliffs, Inc. v. Zoning Bd. of Review of the Town of N.Kingstown, 112 R.I. 314, 319, 309 A.2d 20, 23 (1973); Hopf v. Bd. ofReview of the City of Newport, 102 R.I. 275, 285, 230 A.2d 420, 426
(1967). When an applicant has demonstrated through uncontradicted probative evidence that such rules and standards will be met, a board of review should grant the special use permit; otherwise the board will have abused its discretion. See Salve Regina College v. Zoning Bd. ofReview of Newport, 594 A.2d 878 (R.I. 1991); Perron v. Zoning Bd. ofReview of the Town of Burrillville, 117 R.I. 571, 369 A.2d 638 (1977).
Under the Jamestown Zoning Ordinance § 82-602, an applicant must demonstrate that the "granting of the special use permit will not result in conditions inimical to the public health, safety, morals and welfare" and that "the granting of such special use permit will not *Page 10 
substantially or permanently injure the appropriate use of the property in the surrounding area or district."
 A Section 82-314
Section 82-314, applicable to Appellant's property because it exists in the "High Groundwater Table and Impervious Overlay District," sets certain conditions for an ISDS and storm water management. To demonstrate that the requirements of this section would be met by his proposal, Appellant presented the testimony of two engineers whom the Board qualified as experts. A zoning board may accept or reject expert testimony, but, in the case of a rejection, it must on the basis of competent evidence, and which must be clear in the record. See Resitvov. Lynch, 707 A.2d 663, 671 (R.I. 1998); Goldstein v. Zoning Bd. ofReview of the City of Warwick, 101 R.I. 728, 732-33, 227 A.2d 195,198-99 (1967); Carter Corp. v. Zoning Bd. of Review of the Town ofLincoln, 98 R.I. 270, 273-74, 201 A.2d 153, 155 (1964).
In the event that there is a lack of competent evidence contrary to expert testimony in the record, a zoning board may still reject the uncontroverted evidence through "probative factors within its knowledge" or knowledge acquired through "observation and inspection on a view."Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980). Moreover, a zoning board is "`presumed to have special knowledge of matters that are peculiarly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of a zoning ordinance.'" Bonitati Bros., Inc. v. Zoning Bd. of Review of the City ofCranston, 99 R.I. 49, 55, 205 A.2d 363, 366 (1964) (quoting Kelly v.Zoning Bd. of Review, 94 R.I. 298, 304, 180 A.2d 319, 322 (1962)). "It does not follow, however, that board members are presumed to be qualified experts in any trade, occupation or profession even though these may relate to the use of land. Opinions *Page 11 
of board members as to such matters as . . . the suitability of particular construction methods are not . . . matters so related to the administration of a zoning ordinance as to come within the presumptive expertise of a board of review. . . ." Id.
In all cases in which a zoning board rejects uncontradicted expert testimony, the board must "disclose on the record the observations or information upon which it acted." Toohey, 415 A.2d at 738. Without such findings a decision of a board cannot be sustained. The decisions of this Court "`must necessarily reflect the record as we find it, uninfluenced by factors which may have been known to the board but of which we have no knowledge.'" Id. at 737 (quoting Goldstein,101 R.I. at 733, 227 A.2d at 199). Moreover, "factual findings cannot be merely `conclusional, and the application of the legal principles must be something more than the recital of a litany.'" JCM, LLC v. Town ofCumberland Zoning Bd. of Review, 889 A.2d 169, 177 (R.I. 2005) (quotingKaveny v. Town of Cumberland Zoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005)).
Here, despite the Board's finding that the "[t]estimony of experts showed that there would be a net decrease in runoff post development, as a result of the drainage plan," Mr. Ginnerty, the Board's Chairman and the only member to include his reasons for denying the application, stated that he did not "buy" the expert engineer's testimony. (Tr. 4/24/07 at 44.) Rather, he held that the testimony of engineer Zavalia "did not provide convincing evidence" that the drainage system was adequate to successfully mitigate water runoff. Id. at 42. In addition to Mr. Ginnerty's not being presumed to be an expert in such engineering matters as storm water management, see Bonitati Bros., 99 R.I. at 55,205 A.2d at 366, he admitted on two occasions that he was not such an expert. (See Tr. 3/27/07 at 63, 64.) It is unclear, therefore, upon what evidence or knowledge his decision was based. Perhaps Mr. Ginnerty based his *Page 12 
decision upon the testimony of the upland neighbor, Ms. Neville, who noted that "water problems" affected her basement. (Tr. 4/24/07 at 38, 40.) It is true that lay observations on water conditions are probative evidence, see Restivo, 707 A.2d at 671, and therefore Mr. Ginnerty could rely on Ms. Neville's testimony to find, as he did, that there are "water problems" in the subject neighborhood. (Tr. 4/24/07 at 44.) However, as noted, the Board did not disclose why it disregarded the expert testimony tending to establish a storm water system designed to overcome these potential "water problems."
Accordingly, because insufficient probative evidence exists in the record for the Board to conclude that the storm water management plan does not comply with the objective criteria set forth in § 82-314, the Board's decision on this matter was an abuse of discretion. SeeGoldstein, 101 R.I. 731-32, 227 A.2d at 198-99 (holding that a zoning board cannot disregard expert testimony without providing a basis in probative evidence for that rejection); Salve Regina College,594 A.2d at 882 (denying an applicant a special use permit when the record reveals uncontradicted expert testimony satisfying the special use criteria is an abuse of discretion).
In addition, Mr. Ginnerty noted his concurrence with the Planning Commission's advisory opinion in that Appellant's proposal did not represent "minimum impact of the development area." (Tr. 4/24/07 at 42.) This statement, however, like the Planning Commission's finding, is merely "conclusional": there is no indication why Mr. Ginnerty made such a finding despite a record of expert testimony tending to demonstrate that Appellant's proposal would meet the objective criteria of the zoning ordinance. See JCM, 889 A.2d at 177. Similarly, the finding that the amount of fill required for the project was "not addressed adequately" is also "conclusional" in nature. See id. Such findings cannot be sustained by this Court. *Page 13 
There is also no reference in the record as to why the Board did not accept the expert testimony that tended to show that the ISDS complied with § 82-314, particularly after the Board in its decision found that the "proposal uses an advanced septic system design recommended by the DEM." Such testimony went uncontradicted by any evidence of probative value.
Because the only evidence before the Board tended to prove that which was contrary to its decision regarding the § 82-314 criteria, its decision was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, and was arbitrary, capricious, and an abuse of discretion. See Carter Corp., 98 R.I. at 273-74,201 A.2d at 155.
 B Sections 82-600, 602
Furthermore, the Board did not directly address the testimony of the real estate experts regarding the special use permit criteria of §§ 82-600 and 602. Nevertheless, the record is replete with expert testimony — such as the proposal's conformity with the existing neighborhood — tending to demonstrate that the Appellant's proposal meets the specific criteria of those sections and would not otherwise be "inimical to the public health, safety, morals and welfare" of the neighboring community.
Thus, the record reveals competent, uncontroverted expert testimony satisfying the special use permit criteria. The Board's denial of a special exception upon such a record constituted an abuse of discretion, and its finding were clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. See SalveRegina College, 594 A.2d at 882; Toohey, 415 A.2d at 738. *Page 14 
 IV Reasonable Litigation Expenses
In finding that the Board abused its discretion when reviewing Appellant's application, this Court must consider Appellant's request for reasonable litigation expenses under the Equal Access to Justice Act, G.L. 1956 § 42-92-1 et seq. ("the Act"). The Act provides, in relevant part, that
 (a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust . . .
 (b) If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses shall be made by that court in accordance with the provisions of this chapter.
Section 42-92-3.
In addition, the Act provides that "individuals and small businesses should be, in all fairness, subject to state and/or municipal reimbursement of reasonable litigation expenses when the individual or small business prevails in contesting an agency action, which was without substantial justification." Section 42-92-1(b). "Substantial justification" is defined by the Act to mean "that the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Section 42-92-2(7). And, the Rhode Island Supreme Court has held, the substantial justification test requires an agency to show "not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." See Krikorian v. R.I.Dep't of Human Servs., 606 A.2d 671, 675 (R.I. 1992) (quoting Taft v.Pare, 536 A.2d 888, 892 (R.I. 1988)). However, reasonable litigation expenses may be denied "if special circumstances make an award unjust." *Page 15 
Section 42-92-3(a).
After reviewing the entire record of this case, this Court concludes that the Board did not have a substantial justification for denying Appellant's application. The Appellant's experts provided the Board with considerable evidence tending to demonstrate that the ISDS and the storm water management plan complied with the Jamestown Zoning Ordinance. This testimony went uncontroverted by any evidence of probative value. The Board simply rejected the expert testimony, in a conclusional manner, and disclosed no special knowledge or expertise on the engineering issues presented. Furthermore, the Board did not address the general criteria for a special use permit, the §§ 8-600, 602 requirements, rejecting the application despite the uncontradicted testimony of Appellant's two real estate experts who tended to demonstrate that these requirements were met.
Accordingly, this Court finds that the decision of the Board was not grounded in law or fact, and is therefore without substantial justification. See Taft, 536 A.2d at 893. Because the Board was not substantially justified in its decision, the Appellant may be entitled to an award of reasonable litigation expenses under the Act.See § 42-92-3(a). This Court can discern no "special circumstances" that would make such an award unjust. See id.
Although the Appellant is entitled to reasonable litigation expenses under § 42-92-3, to be awarded such expenses he must first establish that he is a "party" under § 42-92-2(5) (a "party" includes "any individual whose net worth is less than five hundred thousand dollars ($500,000) at the time the adversary adjudication was initiated"). Secondly, Appellant must quantify his litigation expenses and attest to their reasonableness. Both requirements must be met by affidavit within ten days of entry of judgment in this matter. The Board must file any response to Appellant's fee and expense request within ten days of the filing of such request. All *Page 16 
parties must engage in a good faith effort to reach agreement on any remaining fee and expense issues before requesting any further hearing by this Court.
 V Conclusion
For the foregoing reasons, after the review of the entire record this Court concludes that the Board has failed to provide sufficient findings of fact and conclusions of law to support its decision to deny the Appellant's special use permit. The Board's decision is therefore reversed as arbitrary, capricious, clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record, and characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. The matter is hereby remanded to the Board to grant the requested special use permit. In addition, because this Court has found that the Board did not have a substantial justification for denying Appellant's application, Appellant may be entitled to an award of reasonable litigation expenses under G.L. 1956 § 42-92-1 et seq., subject to further hearing.
Counsel shall confer and submit forthwith an agreed upon form of order and judgment in conformance with this decision.
[1] Specifically, he stated that the proposed ISDS is a state approved denitrification technology with a "[m]inimum total nitrogen removal of 50 percent and a reduction to less than or equal to 19mg/1 total nitrogen"; that it meets the standard for total suspended solids and the biochemical oxygen demand; that it achieves the minimum specified rate of "fecal coliform removal"; that it exceeds the ten-foot separation required between a leach field and an infiltration system; and that the proposed leach field will go beyond the minimum requirement that it be one hundred feet from any well. (See § 82-314(B); Tr. 3/27/07 at 19-21, 26.)
[2] Mr. Carrigan had previously testified that the "bowl" effect of the subject property was due, anecdotally, to the removal of "fill" needed to construct the original Jamestown bridge. (Tr. 3/27/07 at 15.)
[3] Mr. Zavalia testified that the proposed storm water management measures would not interfere with any wetlands (as none are near the site) and that the ISDS and the well would be on the same site as the proposed home, as required by the ordinance. (See § 82-314(C)(4); Tr. 3/27/07 at 57-58.)