BOARD OF ZONING APPEALS OF ELK-
HART COUNTY, Airport Realty Corp.,
and Mishawaka Pilots Club, Inc., De-
fendants–Appellants,

v.

NEW TESTAMENT BIBLE CHURCH,
INC., Plaintiff–Appellee.

No. 3–379A87.

Court of Appeals of Indiana,
Third District.

Oct. 28, 1980.

Robert J. Hepler, Larry A. Barkes, Hart-
zog, Barker, Hepler & Saunders, Goshen,
for defendants-appellants.

John D. Ulmer, Yoder, Ainlay, Ulmer &
Buckingham, Goshen, for plaintiff–appellee.

GARRARD, Presiding Judge.

The appellants, the Board of Zoning Ap-
peals of Elkhart County, the Airport Realty
Corporation, and Mishawaka Pilots Club,
Inc., appeal from a judgment of the Elkhart
Superior Court ordering the Board to per-
mit the appellee, the New Testament Bible
Church, Inc., to construct a church activities
building on certain property owned by the
church.  We affirm.

*Facts*

In 1974, the New Testament Bible Church
petitioned the Board of Zoning Appeals of
Elkhart County for permission to construct
a church activities building on land it had
recently purchased.  The property is within
an area designated as A1C (agricultural)
zoning district and it is adjacent to a public
use airport.

The Board held a series of hearings on
the church request, at which a good deal of

objection to the construction was heard. Heading the drive in opposition to the church were operators and patrons of the airport. They feared that if the church were built, within a short time church members would be leading a drive to close the airport as a noise nuisance to church activities. In addition to these complaints, the Board collected evidence that while the proposed structure would pose no threat to safe takeoffs and landings at the airport, the site had on at least two occasions been used for emergency landings. Further, there was concern expressed that because of a large number of both inexperienced pilots and antique aircraft using the airport, the church site would be less than safe. Finally, it was noted that because the peak use hours of the church and the airport would often coincide, there was at least the potential for traffic congestion in the area.

At the conclusion of the hearings, the Board denied the church application, citing noise and safety considerations as controlling. The church appealed the Board's decision, and in reviewing it on a writ of certiorari, the trial court reversed, declaring the Board decision illegal in three respects:

1. The Board had no right to either hear or deny the application under the applicable zoning ordinance. Instead, the trial court ruled the ordinance mandated approval, assuming the proposed church structure met certain other regulatory standards.

2. The denial violated the 1st and 14th Amendments of the U.S. Constitution, as an unconstitutional exclusion of a church from an agricultural area.

3. The denial violated the 5th and 14th Amendments of the U.S. Constitution, and Article 1 of the Indiana Constitution, because it represented a "taking without compensation," rather than a zoning decision.

### Decision

We affirm the trial court's decision, relying on its first rationale in finding illegality. We therefore need not consider the second and third prongs of the trial court's analysis. We believe the New Testament Bible Church, Inc., under the applicable zoning ordinance, was entitled to construct a church activities building, and the Board had no authority to deny it that privilege.

The Board of Zoning Appeals derives its authority from the zoning ordinance established by the Board of Commissioners of Elkhart County. The ordinance describes the Board's powers and duties in this fashion:

"POWERS AND DUTIES OF THE BOARD.

a. The Board shall have the following powers and it shall be its duty to:

1. Hear and determine appeals from and review any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of this ordinance.

2. Hear and decide on permits for conditional uses, development plans or other uses upon which the Board is required to act under this ordinance.

3. Authorize upon appeal in specific cases such variances from the terms of this ordinance as will not be contrary to the public interest, where owing to special conditions, fully demonstrated on the basis of the facts presented, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of this ordinance shall be observed and substantial justice done.

b. In exercising its powers, the Board may reverse or affirm, wholly or partly, or may modify the order, requirement, decisions or determination appealed from as in its opinion ought to be done in the premises and to that end shall have all the powers of the Zoning Administrator from whom the appeal is taken."

The Board asserts it could legally deny the petitioner's request under section a(2) above. However, we disagree. As we will demonstrate, the use of land for a church is a "contingent use," upon which the Board is not required to act, and indeed upon which it cannot act, under the ordinance.

As noted, the property on which the appellee hoped to build was in an agricultural area, classified as an A1C agricultural district. The ordinance makes specific reference to these "agricultural zones," outlining to what use they may be put:

"SPECIFICATIONS A–AGRICULTURAL DISTRICTS AND USES

I. Permitted Uses in Agricultural Districts

'A1C'–Agricultural District

1. Agricultural Uses of all types including the raising of livestock and poultry.

2. Residential Dwellings as specified in Specifications B–Residential Uses.

3. Contingent Uses as specified in Specifications E.

4. Special Uses as specified in Specifications F.

5. Off–Street parking facilities as required in Specifications G.

6. Signs as regulated in Specifications H.

7. Mobile, Compact or Expandable Homes as provided in Specifications J."

Thus, "contingent uses" are one of several permitted uses in agricultural districts. The ordinance defines these contingent uses as "uses which are likely or liable, but not certain, to occur and which are not inappropriate to the principal use of the district in which located." It then provides that "contingent uses, as listed herein, *are permitted* in the district indicated below," and included in that list is a "church or temple," which, according to the ordinance, may be located in all but "M" districts.

■ The ordinance accords no room to discretion. It leaves nothing to the judgment of the Board, and it makes no provision for any denial. Rather, its clear import is that a church is a contingent use, and a contingent use is a permitted use within A1C agricultural districts. If one takes the ordinance at face value, the Board is granted no authority to deny the request for permission to build, assuming the church complied with certain other regulatory provisions of the ordinance, including applicable height and setback restrictions (and there is no evidence that it did not).

Nevertheless, the Board contends it was free to go beyond this purely factual inquiry, once initiated, and consider the pros and cons of locating the church at the proposed location, to consider its impact on the "safety, public convenience, and welfare of the community." In addition, the Board argues it properly adopted the procedure used in hearing applications for "special uses" in making that determination. We cannot agree.

■ The Board may do no more than the ordinance gives it authority to do, and in this case, it is clear the ordinance contemplates no more than a factual inquiry to determine if regulatory provisions have been complied with.

■ The ordinance very clearly delineates between the types of uses to which land may be put: contingent, conditional, and special. The three are not the same. "Contingent uses" imply uses normally contemplated in a particular area, "conditional uses" imply uses normally contemplated but in slightly altered fashion, and "special uses" imply uses not normally contemplated. The ordinance specifically provides that contingent uses *are permitted*, but makes no corresponding provision for either conditional or special uses. Further, it provides very specific procedures which the Board must use in hearing requests for both special and conditional uses, but it provides no procedure for requests for contingent uses. Clearly, the Board was intended to have no authority to deny contingent uses in appropriate areas. We must interpret the ordinance as it is written, and the Board is not free to go beyond its terms, either by adopting procedures or assuming authority to which it is not entitled. *Metro. Bd. of Zoning, etc. v. Shell Oil Co.* (1979), Ind.App., 395 N.E.2d 1283.

Our decision is supported by the weight of authority from other courts, and by our own decisions. For example, in *Application of Rea Construction Company* (1968), 272 N.C. 715, 158 S.E.2d 887, the zoning ordi-

nance permitted, within "M–1 districts," a number of uses. Included were: "mixing plants for concrete paving materials."

Nevertheless, the Board of Zoning Adjustment denied an application by an asphalt mixing plant for permission to construct in an M–1 district, arguing that the plant was "contrary to the public interest in that the building . . . is one which is inherently obnoxious." The Supreme Court reversed, ordering the Board of Adjustment to issue a permit for construction. The Court noted,

> "In the issuance of building permits, a city building inspector acts as an administrative agent and must follow the provisions of the zoning ordinance. [citation omitted] Where the applicant meets all the requirements of the ordinance he is entitled to the issuance of a permit as a matter of right and it may not lawfully be withheld. . . . The board is not a law making body and has no power to amend the zoning ordinance either to permit the construction of a building prohibited by the ordinance or to prohibit the construction of one permitted by the ordinance. . . . Thus, if the ordinance of the City of Statesville permits the construction in an M–1 general industrial district of the proposed asphalt plant, the building inspector acted properly in the issuance of the building permit in this instance and the Board of Adjustment had no authority to revoke the permit. We turn, therefore, to the ordinance to see whether such a building is authorized in such district.
>
> A zoning ordinance, like any other legislative enactment, must be construed so as to ascertain and effectuate the intent of the legislative body. [citation omitted] A zoning ordinance, however, is in derogation of the right of private property and provisions therein granting exemptions or permissions are to be liberally construed in favor of freedom of use.
>
> \* \* \* \* \* \*
>
> The ordinance in question first states, in general terms, that it is intended to permit in an M–1 general industrial dis-

trict any use which is not 'inherently obnoxious to urban areas because of noise, odors, smoke, light, dust or the use of dangerous materials.' (Emphasis added.) It does not, however, stop with this declaration of intent. It goes further and expressly provides that 'mixing plants for concrete or paving materials' are permitted in such districts. Asphalt is obviously a paving material. Whether this provision in the ordinance be regarded as a legislative provision for an exception to the general prohibition of a use which is inherently obnoxious to urban areas because of noise, odors, smoke, light, dust, or the use of dangerous materials, or be regarded as a declaration by the legislative body that an asphalt mixing plant is not inherently obnoxious, the ordinance expressly permits the construction and use of an asphalt plant in an M–1 general industrial district. The Board of Adjustment has no authority to prohibit that which the city council has expressly permitted in the ordinance. Its order directing the revocation of the permit issued by the building inspector was, therefore, in excess of its authority."

We agree with the North Carolina Court's analysis, and in applying it to our own case, it is clear that the Board was not free to deny an application for a contingent use in an A ·1 district where the use was expressly authorized by the ordinance.

Further example is provided in *Metro. Bd. of Zoning, etc. v. Shell Oil Co., supra.* In that case, a gasoline station applied for a permit to construct a canopy pursuant to the zoning ordinance, which permitted service stations to place canopies on their property:

> "6. USE OF REQUIRED YARDS. All required yards shall be landscaped, in grass and shrubbery, trees and/or hedge, or in combination with other suitable ground cover materials, except:
>
> a. Required front yards may include:
>
> (1) Pedestrian walks, access cuts, driveways, flag poles and similar appurtenant uses.

(2) Off–street parking, gasoline service station pumps and/or open canopies (attached or detached).

Provided, however, a six (6) foot wide strip of the required front yard, paralleling and measured from the front lot line, and extending the full length thereof (except for walks, access cuts and driveways), shall be maintained as a landscaped portion of the front yard as required above, unless subject to the transitional yard requirements of section 2.03, B, 7."

However, the Board denied the permit, and after the trial court reversed that decision, the court of appeals agreed the Board had erred:

"In the issuance of permits the board or public official must follow the provisions of the zoning ordinance. *Application of Rea Construction Co.* (1968), 272 N.C. 715, 158 S.E.2d 887; *See also:* 13 Am.Jur.2d, *Building and Construction Contracts* § 8, p. 272. Where the applicant meets all the requirements of the ordinance he is entitled to the issuance of a permit as a matter of right and it may not lawfully be withheld.... Here, when Shell applied for an improvement location permit the only determination to be made by the Department and, thereafter, by the Board was whether the proposed structures were in conformity with the requirements of the zoning ordinance.... Neither the Department nor the Board have the authority to prohibit that which the City–County Council has expressly permitted in the Ordinance."

395 N.E.2d at 1285–86.

In our case, the ordinance specifically permits churches in all agricultural zones, and it does not authorize the Board to decide otherwise. Therefore, we believe the Board acted improperly in denying the church a permit to build.

█ It might be argued that, because New Testament wanted to construct a "church activities building" rather than a church, it does not fall within the permitted use contemplated by the ordinance. However, without deciding whether appellee's proposed structure is a "church" within the meaning of the ordinance, we would point out that in Indiana, if one is entitled to build a church, he may not be denied the opportunity to build accessories as well:

"In this state it has been decided that facilities that go with the church of the particular denomination may not be excluded if the church is admittable. For example, a recreation building and playground in connection with the Meridian Street Methodist Church ... and a 'sisters' home' for the teachers in a Catholic church school."

*Bd. of Zoning Appeals v. Schulte* (1960), 241 Ind. 339, 346, 172 N.E.2d 39.

The trial court was correct.

Affirmed.

HOFFMAN and STATON, JJ., concur.