DECISION
Before the Court is New Life Worship Center's ("New Life" or "Appellant") appeal from a decision of the Smithfield Zoning Board of Review ("Zoning Board" or "Board"), denying a special use permit. This Court has jurisdiction of Appellant's timely appeal pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
New Life is the owner of the property located at 915 Douglas Pike. The property is comprised of approximately forty (40) acres and otherwise known as Assessor's Plot 46, Lot 77. The relevant portion of the property is located in a "Planned Corporate" Zoning District. In 1997, New Life constructed a 38,000 square foot church on its parcel. The church building also contains administrative offices and a day care facility.
In 2001, New Life applied for a special use permit to construct a private regional high school on the property. Under Article 4, Section L-4.C of the Smithfield Zoning Ordinance entitled "Educational Facility, Public or Private," the Zoning Board granted New Life the special use permit to construct the high school. New Life's high school *Page 2 
(Master's Regional Academy) opened to students in 2003. The school is comprised of three floors and consists of approximately 54,000 square feet.
In 2003, New Life opened two fitness areas inside the high school in two separate wings on each side of the gymnasium, which is located on the lower level of the high school's building. One fitness area is exclusive for men and the other for women. Within the fitness center, New Life also opened a dance studio. The fitness center occupies approximately 9500 square feet of the high school building. The fitness and dance facilities are available to students of the high school and, until recently, were open to members of the general public who were charged fees to use the facilities. New Life advertised and distributed brochures to market various services and activities at these facilities that are available to the general public.
In 2008, the Smithfield Zoning Official learned that New Life was operating a commercial fitness center and dance studio out of the high school building. On April 28, 2008, the Zoning Official notified New Life, in writing, that it was required to have a special use permit for this use. New Life's original special use permit only allowed the operation of a high school for education purposes, and it did not extend to commercial or business uses, such as the fitness center and dance studio.
New Life appealed the Smithfield Zoning Official's decision to shut down the fitness center and dance studio. On June 25, 2008, the Zoning Board denied the appeal and unanimously upheld the determination of the Zoning Official. The Zoning Board members questioned how the fitness center and dance studio differ from commercial fitness facilities, since the facilities are not exclusively for high school students or members of New Life church. Pastor Stephen Boyce ("Pastor Boyce") explained to the *Page 3 
Zoning Board of Appeals that the fitness center and dance studio are a part of New Life's community-based ministry; thus New Life "would never stop people from coming onto [their] property and using any of [the] facilities." (June Tr. at 5.) Pastor Boyce explained that New Life charges a fee for use of the facility.Id. at 6. Mr. S. James Busam, a member of the Zoning Board, explained to his fellow board members that he received a brochure advertising the fitness facilities at his home and to him "it certainly looked like a commercial operation, the wording, the approach, the piece. . . ." Id. at 7. Furthermore, Mr. Peter Fogarty of the Board, set forth on the record that "when [New Life] w[as] given authority by this board to build this facility, and [New Life] came before [the Board] and asked for a variance . . . there was no mention whatsoever of there being a fitness center that [New Life] was going to go out to the Smithfield community and seek to charge fees for and run as a business. . . ." (June Tr. at 10.) The Chairman of the Board further clarified that in the original application New Life filed on July 21, 2001, the application was strictly for a high school, "and any activities going on on the campus have to be directly related in part to the school, not the parish, the school."Id. at 11.
Ultimately, the Zoning Board found that New Life was using a portion of the regional high school as a commercial fitness center and dance school and was not using said fitness center exclusively as an ancillary use to the activities of the regional school. Pursuant to Article 4, Section L-4.C, all customary and ancillary uses, such as health care and fitness facilities, must be used exclusively in relation to the permitted use of the regional high school. (June Tr. at 20.) Specifically, the Zoning Board decided that New Life's facility was operating in the business category, which was not permitted under the original application granting New Life a special use permit to operate a regional high *Page 4 
school. Id. at 24. Based on the evidence presented by New Life, the Zoning Board concluded that New Life was operating the facility within the high school building seeking general membership to said fitness center through solicitation and advertisement. Moreover, the Zoning Board found that New Life was charging enrollment and membership fees for the use of the fitness center and dance studio. Additionally, the Zoning Board found that New Life acknowledged that it intended to allow the public to use the fitness center on a fee basis and the center was not exclusively for ancillary activities of the high school. The Zoning Official determined that the use of the fitness center and dance studio at the high school was not permitted under Article 4, Section 4-L.C because it was outside the scope of the original special use permit issued for the sole purpose of operating a high school. Therefore, having found New Life was intending to use the fitness center independent of the activities of the high school, on a regular basis, and such use is not permitted without the approval of a special use permit in accordance with Article 4, Section G.14, Health and Fitness Center, of the Smithfield Zoning Ordinance, the Zoning Board denied New Life's appeal of the Zoning Official's decision.
New Life did not pursue an appeal of the Zoning Board's decision to this Court. Instead, New Life applied to the Smithfield Zoning Board for two special use permits to allow for the operation of its fitness center and dance studio within the high school building. On July 29, 2008, New Life filed an application under the Town of Smithfield Ordinance — Section 4.3.G.14, "Health and Fitness Center" and Section 4.3.D.13 and 4.4.D.13, "Trade School" — seeking permission to operate a health and fitness center and a dance studio in a Planned Corporate District. The Zoning Board held four properly noticed public hearings over the course of four dates: August 27, 2008; October 30, 2008; *Page 5 
November 19, 2008; and January 17, 2009 at which New Life presented seven witnesses and numerous exhibits. The hearings consisted primarily of the testimony of Pastor Stephen Boyce, Mr. John Caito, Mr. Francis Perry, Mr. Michael Corcoran, Mr. Michael W. M. Dube, and Mr. George D. Caldow.
Additionally, after the first two advertised hearings, the chairman of the Zoning Board ordered New Life to have its application reviewed by the Town's Technical Review Committee ("TRC") or the Town Engineer, pursuant to Section 10.9 of the Smithfield Zoning Ordinance, which mandates "[a]ll uses which require a Special Use Permit shall also require Technical Review by the Town Engineer." New Life then appeared before the TRC on November 10, 2008. (Oct. Tr. at 56.) New Life was required to submit for review a site plan prepared by a professional engineer, architect, or surveyor. According to the plan prepared by an engineer of Mr. John Caito's ("Mr. Caito") firm, the TRC determined that the proposal, as it relates to traffic on the subject property, is reasonable except for the operation of the fitness center and dance studio on Sunday mornings during church hours. Thus, according to the TRC, New Life satisfied the required parking regulations set forth in the Zoning Ordinance.
When New Life appeared before the Zoning Board during the November and January hearings, the Zoning Board asked New Life to demonstrate that its proposal met a list of criteria set forth in Section 10.8.C.2 of the Smithfield Zoning Ordinance. Specifically, New Life was asked to relate its proposal to general compatibility with surrounding areas, traffic concerns, economic issues, noise, glare and odor impacts, and effects on adjoining properties and properties in the district. The members of the Zoning Board commented on their fear regarding the "commercialization" of the high school *Page 6 
building and their concern that the "special use permit will alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the comprehensive plan of the town." (Aug. Tr. at 9-10.) Pastor Boyce testified explaining to the Zoning Board that "it was always the intention of having [the fitness center and dance studio] be not just exclusive to [their] little group." Id. at 7. He continued to explain that the fitness center was built "to help defray some of the costs" of the church.Id. at 8.
The Zoning Board found New Life's being permitted to use the high school building as a commercial fitness center under a special use permit would open the door to utilizing the same property for an array of additional commercial uses with no meaningful zoning control. (Aug. Tr. at 11, 13.) Furthermore, the Zoning Board's main contention with the establishment of the fitness center and dance studio was its concern for the safety of the students of the high school. The Zoning Board argued that New Life has "exposed the school environment to an outside environment" because New Life has "opened the membership up to anybody and everybody." (Nov. Tr. at 80.) Additionally, Mr. Fonesca of the Zoning Board testified that he received at his home a copy of the Smithfield Magazine, which contained an advertisement to the public explaining that the fitness center within New Life's high school was available to the public for rent. (Nov. Tr. at 88-89.)
At the conclusion of the final hearing on January 7, 2009, the Zoning Board made a motion to take New Life's application under advisement. After deliberation and review of the testimony, documents, and records presented in connection with New Life's application, the Board unanimously denied New Life's application for a special use *Page 7 
permit. In its written decision, the Board set out its findings of fact and conclusions of law.
The Board found that the use of the subject property for a commercial health and fitness center and dance school is a permitted use by Special Use Permit pursuant to the Smithfield Zoning Ordinance. However, the Board found that there was incongruous testimony offered by various witnesses presented by New Life. Moreover, in accordance with Article 10, Section 10.8.C.2.8, the Zoning Board concluded that although a conditionally permitted use, the proposed use of the property is incompatible with the existing use of the regional high school. The determination of the Zoning Board was based in part on the testimony of Mr. Michael W. M. Dube ("Mr. Dube"), who acknowledged that there was a potential public safety issue if male patrons of the fitness center or dance school were allowed access to the subject property during the hours of operation of the regional high school. Additionally, the conclusion of the Zoning Board was also based in part on the general knowledge of the Board members that allowing public access to a regional high school creates a potential health, safety, and welfare danger for the regional high school students. The Board further concluded that although Mr. Dube presented testimony with regard to the safety and security systems adopted and abided by New Life, the members of the Zoning Board found that the adverse impact of approving the special use permit cannot be minimized or alleviated. This timely appeal followed. *Page 8 
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69 (d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69. This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Section 45-24-69 (d).
When reviewing a decision of a zoning board, the court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, a reviewing court may not substitute its judgment for that of the zoning board's if *Page 9 
the court "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 III A Appellate Issues
On appeal, New Life argues that the Zoning Board's denial of the application for a special use permit was arbitrary and capricious as it was not based on substantial evidence. Specifically, New Life contends that its proposal is compatible with the surrounding area and with the original use of the building. Moreover, Appellant asserts that there are no security or safety issues with respect to its proposal. New Life believes that the Board disregarded evidence suggesting that the potential problems of safety and security were a non-issue, and the procedures presented to the Board explaining the preventative measures were mischaracterized and not adequately relied upon by the Board. Lastly, Appellant posits that the Zoning Board's denial of the application was a violation of the "Religious Land Use and Institutionalized Persons Act," 42 U.S.C. § 2000 ("RILUIPA"), and the Rhode Island "Religious Freedom Restoration Act," § 42-80.1-1 ("RI RFRA"). According to Appellant, the competent evidence adduced before the Board actually supports the granting of a special use permit. As such, Appellant urges this Court to find that the Board's decision is arbitrary and capricious; characterized by abuse of discretion; clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; a violation of constitutional, statutory and *Page 10 
ordinance provisions; and in excess of the authority granted to the Zoning Board by statute or ordinance.
The Zoning Board argues that the record does contain substantial evidence supporting its decision to deny New Life's requests for a special use permit. The Zoning Board concluded that the Appellant failed to sustain its burden of establishing that the proposed uses met the general compatibility criterion in subsection (8) of Section 10.8.C.2.c of the Smithfield Zoning Ordinance. Specifically, the Board states that its finding — that the proposed health and fitness center and dance studio are not compatible with the existing use of the regional high school because of safety and security concerns associated with both uses in one building — is supported by testimony of Mr. Dube, who implicitly acknowledged the potential safety issues and the inadequate solution to the problem presented by New Life. Furthermore, the Board contends that the denial of the special use permit does not rise to the level of supporting a RLUIPA or RI RFRA claim.
 B The Special Use Permit
It is undisputed that the use of the subject Parcel for a commercial fitness center and dance school is a permitted use by way of special use permit pursuant to the Town of Smithfield Zoning Ordinance ("SZO"). The General Assembly has delegated authority to the municipalities to establish standards generally applicable to all special use permits to be issued by the various cities and towns. See section 45-24-42. In Smithfield, the *Page 11 
Appellant filed its application under the SZO, Section 4.3.G.14, "Health and Fitness Center,"[1]
and Sections 4.3.D.13 and 4.4.D.13, "Trade School."[2]
"When applying for a grant of a special exception, an applicant must preliminarily show that the relief sought is reasonably necessary for the convenience and welfare of the public." SalveRegina College v. Zoning Board of Review of City of Newport,594 A.2d 878, 881 (R.I. 1991). "The rule [is] that satisfaction of a `public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare."Nani v. Zoning Board of Review of Smithfield,104 R.I. 150, 156, 242 A.2d 403, 403 (1968). In addition to satisfying the conditions established by Article 10, Section 10.8.C.2.8, applicants must also satisfy the specific criteria applicable to the particular special use permit that they seek.
As for the instant application, according to the decision of the Zoning Board, in accordance with Article 10, Section 10.8.C.2.8, the proposed use of the fitness center and dance school is incompatible with the existing use of the subject building, which is a regional high school. In accordance with this Section, to allocate a special use permit to New Life, the Board shall require evidence showing that the granting of the permit: *Page 12 
 will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town. In so doing, the Board shall consider where applicable, the general compatibility [of the proposed use]; the pertinent traffic, economic, noise, glare or odor effects of the Special Use Permit on adjoining properties and properties generally in the district. Section 10.8.C.2.8.
The Appellant argues that it presented overwhelming evidence in support of its application for a special use permit. The Appellant contends that abundant testimony from Mr. Caito of Caito Corporation, along with a prepared parking matrix, was adequate to satisfy the issue of parking and traffic congestion resulting from the increased use of Appellant's property. The Zoning Board did not make any findings to the contrary in their written decision denying Appellant's application for the special use permit.[3]
Accordingly, this finding is supported by the record, including the abundance of evidence showing that the problems associated with parking are not at issue in this case. This Court cannot substitute its judgment for that of the Zoning Board as to the weight of this evidence.[4] Arnold v. Level, 941 A.2d 813, 921 (R.I. 2007). *Page 13 
 Safety and Security
Appellant primarily argues that the Zoning Board's reliance on the fact that the fitness facility and dance studio are a potential public safety issue as the basis for its denial of New Life's application for a special use permit is arbitrary, capricious and characterized by an abuse of discretion. Specifically, Appellant argues that evidence of adequate security measures, such as camera surveillance and magnetically controlled locks, was presented to the Zoning Board. However, the Zoning Board determined that the Appellant failed to prove that its proposed fitness center and dance studio are compatible with the existing use of the high school.
"As a condition precedent to the grant of a special exception, an applicant must establish that the relief sought is reasonably necessary for the convenience and welfare of the public."Toohey v. Kilday, 415 A.2d 732, 736 (1980). Our Supreme Court has held that a zoning board "may not deny granting a special exception to a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment." Salve Regina College v. Zoning Bd. of Review ofCity of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingToohey, 415 A.2d at 735). When seeking a special use permit — to satisfy the prescribed standard — the rule is that "the applicant [must] show . . . that `neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals.'" Toohey,415 A.2d at 736 (quoting Hester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 637, 642 (1971)).
Here, New Life presented two witnesses, Pastor Boyce and Mr. Dube, along with two letters written by the Smithfield Police and Fire Departments to evidence the properly established safety and security procedures implemented to protect the high *Page 14 
school students. New Life's first witness, Pastor Boyce, is the pastor of New Life Worship Center. Pastor Boyce explained that the fitness facility is open to the public while the high school is in session from 7:30 a.m. to 3:00 p.m. Additionally, paying members of the general public are able to enter the high school building during after school activities, and while the students are participating in high school sports. (Oct. Tr. at 18.) Based on the evidence presented by New Life, specifically the testimony of Pastor Boyce, the record evidences that the fitness center and dance studio were not only erected to provide ministry to the community, but mainly "to help defray some of the costs that [New Life] incur[s] building and maintaining" the high school building. (Aug. Tr. at 6.)[5]
Next, New Life presented Mr. Dube, the Principal of New Life Regional High School, [6] to further discuss the issue of safety surrounding the fitness center and dance studio. As the principal, Mr. Dube is responsible for the day-to-day operation of the building, as well as being accountable for the safety and security of the New Life Worship Center campus. Additionally, Mr. Dube is in charge of the school's voluntary implementation of the "extensive emergency crisis plan and security plan" that is required for all public schools under G.L. 1956 § 16-21-23. (Jan. Tr. at 12.) Moreover, according to Mr. Dube, representatives of the Smithfield Police and Fire Departments have reviewed the plan and submitted two letters explaining that the plan satisfies the statute. (Jan. Tr. at 13-15.) (Exhibit 10). *Page 15 
However, the Zoning Board found that the letters written by the police and fire departments did not address the compatibility of a commercial fitness center and dance school being located within the high school. (Jan. Tr. at 23-24.) Thus the compatibility, safety and security of the multiple uses in the same high school building concerned the Chairman of the Zoning Board:
 the two [uses of the building] in this particular application go hand in hand, the safety of the school and the gymnasium and open to the public, why in the[] evaluations and the[] letters there was really no mention [of the building being open to the public][.] [I]t was just strictly as if the school was a free-standing entity and it had nothing else available to it. (Jan. Tr. at 26.)
The record reveals that the two letters do not address the concerns of the Zoning Board. Furthermore, the emergency crisis plan on record does not minimize or alleviate the potential for danger to the students because of the entry of the general public into the high school building.
Additionally, with respect to the issue of safety and security, the Zoning Board found that New Life intended to allow members of the public to use the fitness center on a membership fee basis.[7]
The Chairman of the Board posited that "the problem is the size of [New Life's] reach out, the size of [the] reach out becoming commercial." (Nov. Tr. at 79.) Thus, the individuals who pay the membership fee are able to use the fitness facilities during particular hours that were explained to the Zoning Board by Mr. Dube. Mr. Dube testified that the fitness facility is open to "anyone" from 5:00 a.m. to 7:00 a.m. Subsequently, at 7:00 a.m. the doors of the high school building are locked and access is *Page 16 
controlled so "that at no time are men allowed in that building during school hours." (Jan. Tr. at 21.)[8] However, Mr. Dube did not explain how he or another member of his staff would ensure that the patrons of the facility were not in the building at 7:00 a.m. as the students start their school day. At 3:30 p.m., access is "reopened to men who may wish to use the facility and the fitness center." Id. New Life relied on the testimony of Mr. Dube to explain why men are not admitted to the facility: "men commit the vast majority of crimes, and when we talk about violent crimes, the percentage is even increased more." (Jan. Tr. at 23.) No further evidence was presented to the Zoning Board regarding the issue of women being present in the high school building during school hours.
To evidence the security measures in place to protect the students from the individuals utilizing the fitness facilities, Mr. Dube continued to explain that access is controlled through magnetically-locked doors, where the individual wishing to enter the building must appear before a security camera, where he or she is identified after giving a valid reason for entry. (Jan. Tr. at 22.) Within Mr. Dube's office, the audio and video recordings are in two stations, one being in his front office that is "continuously viewed by someone." Id. However, upon questioning by the Zoning Board, Mr. Dube admitted that he "can't say that every second of every day the [video recordings are] being monitored."Id. at 22-23. With respect to the measures implemented by New Life, the record reveals that although these small steps were taken to protect the students, many of these security procedures are implemented by other schools even though the other schools are not operating a commercial operation in the same building as the students. *Page 17 
(Jan. Tr. at 20-22.)[9] However, public schools in the Town of Smithfield do not rent out their gyms during school hours, as Mr. Fonseca, a member of the Zoning Board testified, "[t]he answer is the [schools of Smithfield] do not rent out [the gymnasium] during school hours." (Jan. Tr. at 34.)[10]
Accordingly, although Mr. Dube posited that his office controls the entryway and either he or a member of his staff decides whether to allow the individual to enter the building, the Zoning Board's decision that the operation of the fitness center and dance studio in the high school building would have an adverse impact on the safety of the students was supported by substantial evidence. "There must be in the record competent evidence to support [the Board's] findings, otherwise [the Board's] action will be deemed an abuse of the discretion vested in it by the ordinance." Melucci v. ZoningBd. of Review of Pawtucket,10 R.I. 649, 652, 226 A.2d 416, 418 (1967) (citing Del Toro v.Zoning Bd. of Review of Bristol,82 R.I. 317, 107 A.2d 460 (1954)). Without such adequate findings of fact, "it would be difficult to sustain the board's decision . . . in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision."Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) (quotingSouza v. Zoning Bd. of Review of Warren,104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968). *Page 18 
However, at present, there is relevant evidence on the record that a reasonable mind might accept as adequate to support a conclusion that the safety and welfare of the students are at risk when members of the public are allowed access to the high school building.Lischio, 818 A.2d at 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). This Court, as the reviewing court, may not substitute its judgment for that of the zoning board's if the court "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs., 841 A.2d at 672 (R.I. 2004) (quotingApostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
Regarding the issue of security, Mr. Dube testified that during the school day only women have access to the school building to use the fitness center and dance studio. The Zoning Board found that Mr. Dube's response that "men commit the vast majority of crimes, and when we talk about violent crimes, the percentage is even increased more" was inadequate in explaining why only women are allowed into the fitness facilities during school hours. (Jan. Tr. at 22.) This response did not adequately address the Board's safety concerns, nor is the exclusion of men a usual method of protecting the safety of school children. (Jan. Tr. at 23.)
Additionally, as to the protection of students during after school activities, New Life presented evidence that the controlled access to the school building ends at 4:00 p.m., and at that time, a member of the public no longer needs to be "buzzed into" Dube's office to gain access to the high school building. In deciding on this particular time for the security measures to cease, New Life relied on the fact that 4:00 p.m. is "more than enough time for [the school] activities relative to students and the pickup to be completed *Page 19 
. . . with the exception of . . . sports activities." (Jan. Tr. at 35.) Due to the co-mingling of members of the public and students participating in sports or other after school activities, the Zoning Board's finding that the adverse impact of approving the Special Use Permit cannot be minimized or alleviated by the safety procedures being utilized by New Life was not clearly erroneous. Mr. Dube, by way of his testimony, implicitly acknowledged that there was a potential safety issue if male patrons of the fitness center or dance school were allowed access to the subject property during the hours of the operation of the regional high school. The acknowledgment by Mr. Dube that extensive security measures were necessary to protect the safety of the students supported the Zoning Board's determination that the proposed special use is incompatible with the existing use of a high school in the same building. The record evidence supports the Zoning Board's finding of the inadequate safety procedures and testimony of Mr. Dube.
The Board had before it competent evidence, including the testimony provided by Mr. Dube, that the fitness facilities were not used exclusively for ancillary activities of the high school and thus posed a danger to the safety of the high school students. Moreover, the Zoning Board found based on its own personal observations, that other schools in Smithfield do not have commercial businesses operating within the school building, do not allow the general public to pay a fee to use their fitness facilities, and do not rent their gymnasiums to members of the public during school hours. (Jan. Tr. at 33-35.) Furthermore, the Zoning Board based its findings with respect to safety and security on its own personal observations and the general knowledge of the members that allowing individuals of the general public into a school increases the chances that a student could face harm. *Page 20 
In determining whether the requisites for a special use permit have been satisfied, "a board may consider probative factors within its knowledge or may acquire adequate knowledge through observation and inspection. . . ." Toohey v. Kilday,415 A.2d 732, 737, (R.I. 1980); see also Salve ReginaCollege v. Zoning Bd. of Review, 594 A.2d 878, 882 (R.I. 1991). Such "personal knowledge and inspection" are considered "competent, reliable evidence only if the Board discloses its reliance on the information on the record of the hearing." Id.; seealso Restivo v. Lynch, 707 A.2d 663 (R.I. 1998); seealso Bonitati Bros. v. Zoning Bd. of Review of City ofCranston, 99 R.I. 49, 54, 205 A.2d 363, 366 (1964) (finding "that a board of review is presumed to have a special knowledge of matters that are peculiarly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of a zoning ordinance).
Here, the transcript clearly reveals that the Board members relied on and disclosed their own knowledge of the safety issues involved with individuals of the community having access to a high school during its hours of operation. The Zoning Board stated that New Life has "exposed the school environment to an outside environment" because New Life has "opened the membership up to anybody and everybody." (Nov. Tr. at 80.) The Chairman of the Board further stated that "in the public school environment, nobody can go in [the school] building, nobody." Id. In making his own observations, the Chairman of the Board responded that "the way [he] look[s] at it, what the general surrounding area, it's a school. . . . It's meant for school activities, school sporting activities. It's meant for things that are specifically geared for the school, specifically geared for the church. . . ." (Aug. Tr. at 10.) Moreover, another member of the Board, Mr. Greene, personally inspected the facility and relied on his *Page 21 
experience in making his decision to deny the permit. Mr. Greene explained that he "certainly had no trouble walking in[to] [the school building] in the middle of the afternoon when [he] went over to look at the facility." (Jan. Tr. at 47.) Additionally, when Mr. Greene walked into "the fitness center and was not stopped, [he] walked right into the men's area, and there were a couple of kids in there working out, and [he] saw no security in either building."Id.
Also, the Chairman explained that he doesn't "know anybody that has a health care center that's open to the public in a public school." (Jan. Tr. at 36.) The law clearly permits Board members to rely on their own personal observations, and such knowledge may be considered substantial evidence. "[A] Board is presumed to have special knowledge of matters that are particularly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of the zoning ordinance." Bonitati Bros. v. Zoning Bd. of Review,99 R.I. 49, 55, 205 A.2d 363, 366 (1964).
Therefore, the record demonstrates that the denial of the special use permit was based upon the substantial testimony of Mr. Dube and his acknowledgment that there was a potential public safety issue if the public were allowed access to the subject property during the hours of operation of the high school. The Zoning Board's conclusion is based on the general knowledge of the Board members that allowing public access to a regional high school increases a potential health, safety and welfare danger for the students. The Zoning Board concluded that although evidence was presented by New Life with regard to the safety and security systems adopted by the Appellant, the adverse impact of approving the special use permit cannot be minimized or alleviated. *Page 22 
 Religion
Next, New Life contends that the Zoning Board's denial of its application for a special use permit is a violation of 42 U.S.C. § 2000cc, the Federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") and § 42-80.1-1, the Rhode Island Religious Freedom Restoration Act ("RFRA"). New Life argues that the RLUIPA embodies the concept that "if one is entitled to build a church, he may not be denied the opportunity to build accessories as well." Mintz v. Roman Catholic Bishop ofSpringfield, 424 F.Supp.2d 309, 321-22 (D. Mass) (quotingBoard of Appeals of Elkhart County v. New Testament Bible Church,Inc., 411 N.E.2d 681, 685 (Ind.Ct.App. 1980). Specifically, New Life posits that the proposed uses of the property, as a family fitness center and dance studio, are an exercise of religion within the meaning of RLUIPA and the Board's denial of the application has created a substantial burden on New Life's religious exercise. Alternatively, the Zoning Board argues that the denial of a special use permit to operate a commercial fitness center or dance studio does not rise to the level of supporting a RLUIPA or RI RFRA claim. The Zoning Board contends that there is no evidence in the record to suggest that the commercial operation of the fitness center and dance studio constitutes a religious exercise, nor does the Board's denial of the special use permit impose any "substantial burden" on the Appellant's free exercise of religion.
RLUIPA was enacted in response to congressional concerns that churches are "frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation." See Freedom BaptistChurch of Delaware County v. Township of Middletown,204 F.Supp.2d 857, 862 (E.D. Pa. 2002) (quoting from Joint Statement of Sen. Hatch and Sen. Kennedy on the *Page 23 
Religious Land Use and Institutionalized Persons Act of 2000, 146 Cong. Rec. S7774-01, Ex. 1 (July 27, 2000)). Under RLUIPA,
 [n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc(a)(1).
RLUIPA requires that a claimant reveal evidence that a government "impose[d] or implement[ed] a land use regulation that impose[d] a substantial burden on the religious exercise of a . . . religious institution. . . ." 41 U.S.C. § 2000cc(a)(1). Therefore, for there to be a violation, there must be a religious exercise at issue. In addition, the burden imposed upon that exercise must be "substantial" enough for the court to find a violation of the RLUIPA. As such, the court reviews RLUIPA claims under a strict scrutiny standard of review. See Cottonwood ChristianCenter v. Cypress Redevelopment Agency,218 F.Supp.2d 1203, 1220 (C.D. Cal. 2002) (RLUIPA provides strict scrutiny standard of review for land use cases).
While the meaning of the term "substantial burden" is not provided for in the statute, "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of belief." 42 U.S.C. § 2000cc-5(7)(A). The first prong is whether the operation of a fitness center and dance studio within a high school building, which is open to members of the general public for a fee, falls within the definition of a religious exercise. The testimony in the record is uncontradicted that New Life conducts recreational activities as an official part of its program of worship. However, "[t]his is *Page 24 
not to say, that a church can enjoy completely unfettered use of its property just because the activities conducted thereon bear some relation to a church purpose." Corporation of Presiding Bishop,etc. v. Ashton, 92 Idaho 571, 448 P.2d 185 (1968); seealso Sexton v. Bates, 17 N.J. Super. 246, 85 A.2d 833 (1951). New Life does not claim that the fitness center and dance studio would house "an office for religious education," or "a meeting place for the parish council," or the "locus of small gatherings related to church services." But cf. Mintz v. Roman Catholic Bishop ofSpringfield, 424 F.Supp.2d 309, 319 (2006) (finding that the proposed parish center fell within the definition of "religious exercise" because it would house an office of religious education, serve as a meeting place for parish counsel, and the locus of church service gatherings).
"Of course, every building owned by a religious organization does not fall within [the definition of religious exercise]. Buildings used by religious organizations for secular activities or to generate revenue to finance religious activities are not automatically protected." Mintz, 424 F.Supp.2d at 318. For example, a reasonable use of a fitness center and dance studio in connection with the activities of the church located on the property would not be objectionable under the Smithfield Zoning Ordinance. However, "the religious aim of strengthening the congregation through fellowship may not be permitted to be perverted into a justification for establishing" a commercial operation of a fitness center and dance studio that is open to the public and located in the same building where students attend school.Community Synagogue v. Bates,1 N.Y.2d 445, 493, 154 N.Y.S.2d 15, 22 (N.Y.C.A. 1956);see also Westchester Day Sch. v. Village ofMamaroneck, 386 F.3d 183, 189-90 (2nd Cir. 2004) (rejecting as too expansive trial court's determination that renovation of a religious school, which would include rooms *Page 25 
for secular functions, was entirely "religious"). Additionally, Pastor Boyce admitted during his testimony before the Zoning Board that the fitness center and dance studio were erected "to help defray some of the costs that [New Life] incur[s] building and maintaining" the high school building. (Aug. Tr. at 6.) As here, the fitness facility and dance studio within the high school building would be used to generate revenue for New Life. This Court is satisfied that this building is not automatically protected as falling within the definition of religious exercise.
In the present case, the proposed use of a fitness center and dance studio in the high school building does not constitute an ancillary use to the Church itself. Although the use of fitness may be an integral part to the mission of New Life's church program, the proposed use will provide the members of the public with accessibility to the high school students. New Life presented Mr. Dube, the principal of the high school, as its expert witness on the issue of security. Although Mr. Dube set forth safety and security measures to protect the students, the Zoning Board relied on Dube's implicit acknowledgment of the potential danger to the students and concluded, based on his testimony, that the potential danger to the students creates a major health, safety, and welfare issue. The Zoning Board did not cite loss of tax revenue, a decrease in property value, increased noise or traffic as the grounds to justify excluding New Life from operating a commercial fitness center; the Board cited its concern for the safety and well being of the students. Cf. Diocese of Rochester v. Planning Board of Townof Brighton,1 N.Y.2d 508, 154 N.Y.S. 2d 849, 136 N.E.2d 827 (1956) (the appellate court pointed out that churches and attendant uses are permitted in residential areas and that a loss of tax *Page 26 
revenue, decrease in property values, increased noise or traffic are not sufficient grounds to justify excluding a church from a residential neighborhood).
Furthermore, RLUIPA does not define "substantial burden." However, the Supreme Court has "made clear in other contexts[,] that the `substantial burden' hurdle is high and that the issue is intensely fact specific." Mintz, 424 F.Supp.2d at 319; but cf.Hobbie v. Unemployment Appeals Comm'n,480 U.S. 136, 141 (1987) (finding a substantial burden when government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); see also Lyng v.Northwest Indian Cemetery Protective Ass'n,485 U.S. 439, 450-51 (1988) (no burden where government action interferes with, but does not coerce, individual's belief) (citingBowen v. Roy, 476 U.S. 693, 699-700). Additionally, the Seventh Circuit determined that "a land-use regulation that imposes a substantial burden on religious exercises is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise — including the use of real property for the purpose thereof within the regulated jurisdiction generally — effectively impracticable." Civil Liberties for UrbanBelievers v. City of Chicago,342 F.2d 752, 761 (7th Cir. 2003).
In this case, the denial of the special use permit does not render religious exercise on the subject parcel impracticable. In fact, this Court does not find that New Life's inability to operate a commercial fitness center and dance studio, in the same building as the high school to be a substantial burden on New Life's religious exercise as a matter of law. See Midrash Sephardi,Inc. v. Town of Surfside, 366 F.3d 1214 (2004) (to result in "substantial burden" on religious exercise, "zoning ordinance must place more than inconvenience on religious exercise; `substantial burden' is akin to significant pressure *Page 27 
which directly coerces religious adherent to conform his or her behavior accordingly). The inability of New Life to operate the fitness center and dance studio as a commercial business to generate funds to support the parish and the building of the high school does not pose any significant pressure on the members of New Life. The members of the church are not being asked to conform their behavior in practicing their religion, nor are the religious activities of the church being compromised. New Life is permitted to seek a permit to operate a fitness center and dance studio any other place on the subject parcel, just not in the high school building. SeeEpiscopal Student Found. v. City of Ann Arbor,341 F.Supp.2d 691, 70 (E.D.Mich. 2004) (denial of permit to demolish building that was inadequate to fulfill plaintiff's religious needs did not substantially burden free exercise rights because plaintiff's needs could be addressed by leasing new space or by expanding or renovating the building).
Furthermore, the Zoning Board argues that even if the denial of the special use permit becomes a minimal burden on New Life's religious exercise, it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. 2000cc(a)(1)(B). When a municipality properly asserts a compelling interest in the enforcement of zoning regulations and maintaining the safety of residential neighborhoods, such an interest must be protected only by the least restrictive means possible. The United States Supreme Court has concluded that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Wisconsin v. Yoder,406 U.S. 205, 215 (1972).
Here, the Zoning Board is not prohibiting the operation of a fitness center or dance studio for the members of New Life church. Instead, the Board and the Court *Page 28 
concur that the denial of the special use permit to protect the students of the high school from the regular entry into the building by members of the general public is a compelling governmental interest. The Zoning Board is not denying New Life the opportunity to practice ancillary activities on the property, but rather disallowing open access to the high school building in fear of the potential danger to the students. This Court is satisfied that the Board, acting in the least restrictive means possible, is not curtailing fitness for the members of New Life as a way to strengthen the family unit of the Church or for any other reason. For example, no steps were taken by the Zoning Board to prevent high school students and church-going members of New Life from using the fitness center and dance facility. Contra Murphy v. Zoning Com'nof Town of New Milford, 148 F.Supp.2d 173 (D. Conn. 2001)vacated on procedural grounds 402 F.3d 342 (2d Cir. 2005) (a cease and desist order prohibiting the owner of a single-family residence from holding prayer meetings failed under RLUIPA because it was not the least restrictive means available). Therefore, this Court finds that there is no evidence in the record to suggest that the denial of the special use permit imposed a "substantial burden" on New Life's free exercise of religion.
As to the RI RFRA claim, the Zoning Board argues and this Court agrees that the RI RFRA allows persons to bring civil actions against governmental authorities for imposing improper restrictions against the free exercise of religion. Under § 42-80.1-3,
 [a] governmental authority may restrict a person's free exercise of religion only if:
 (1) The restriction is in the form of a rule of general applicability, and does not intentionally discriminate against religion, or among religions; and
 (2) The governmental authority proves that application of the restriction to the person is essential to further a compelling governmental interest, and is the least *Page 29 
restrictive means of furthering that compelling governmental interest.
New Life is applying for a special use permit under the Smithfield Zoning Ordinance which is a body of rules of general applicability to all persons owning property in the Town of Smithfield. The Zoning Ordinances do not intentionally discriminate against religion or among religions. "Neutral rules of general applicability do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." EmploymentDiv. v. Smith, 494 U.S. 872, 879 (1990). Additionally, as set forth above in the analysis of New Life's RLUIPA claim, the Zoning Board's denial of New Life's special use permit was to further a compelling governmental interest and was the least restrictive means of furthering that interest.
"While religious uses may not, in most jurisdictions, be excluded from the municipality, or even from the most restricted residential areas thereof, these uses are not immune to all regulations under the police power of the state." 2 Anderson's American Law ofZoning, § 12.23, "Restrictions on religious use; special permits" (4th Ed. 1996). This Court is satisfied that the Town of Smithfield Zoning Board properly restricted the permit requested by New Life because "religious institutions must observe the fire laws, the sanitary restrictions, and the building codes which apply alike to all, and which protect the health and safety of the public." Id. Here, the Zoning Board was acting in the least restrictive manner available to protect the health and safety of the students attending high school in the building. "Religious uses, like other uses of land, may be subjected to reasonable regulations." Id. The Court notes that there is nothing in the Zoning Board's findings for denial of the special use permit to suggest that New Life would not be able to obtain a permit to operate a commercial fitness center on its property if it were not *Page 30 
located in the high school building. See
Nov. Tr. at 83-85 (discussion by Zoning Board members about the fact that their concerns were limited to the location of the fitness center in the same building as the high school). This Court is satisfied that New Life is not substantially burdened by the Zoning Board's denial of its application because it may continue to allow students and church members to utilize its fitness center. As such, this Court concludes that the denial of the special use permit to New Life does not rise to the level of supporting a RLUIPA or a RI RFRA claim.
 Conclusion
This Court finds that the Town of Smithfield Zoning Board of Review's decision was not arbitrary or capricious or characterized by an abuse of discretion. The Court further finds that the Board's decision was not erroneous in light of the reliable, probative, and substantial evidence contained of the entire record showing that the proposed use of the existing structure would create a potential health, safety, and welfare danger for the high school students. Substantial rights of the Appellant have not been prejudiced. For all of the foregoing reasons, the decision of the Town of Smithfield Zoning Board of Review denying the application for a special use permit is affirmed.
Counsel shall submit an appropriate judgment, consistent with this opinion, for entry.
[1] Section 4.3.G.14, "Health and Fitness Center," is defined as "[a]n establishment that provides facilities for aerobic exercises, running and jogging, exercise equipment, game courts, swimming facilities, and saunas, showers, massage rooms, and lockers, and provided that:
 A. Noise is confined to the building.
 B. Such building is located not less than fifty (50) feet from properties used or zoned for residential purposes.
 C. Such facilities may include an accessory retail use for a pro-shop or similar type of retail establishment which may be no larger than five thousand (5,000) square feet of floor area."
[2] Sections 4.3.D.13 and 4.4.D.13, "Trade school, not including vehicle repair," is defined as "[t]rade schools, public and private institution providing training and/or instruction in art, business, bookkeeping, accounting, secretarial and the like, cosmetology,dancing, driving, hair styling, music conservatory; NOT INCLUDING vocational and trade skills in automotive, construction, metallurgical, chemical and similar industrial operations, driving heavy equipment or vehicle repair schools." (Emphasis added.)
[3] The Zoning Board expressed its concern that there would not be adequate parking if the fitness center and dance studio were both open to the public on Sunday mornings while the Church services are underway. However, according to the substantial evidence set forth by New Life, on weekdays, 143 parking spaces are required; on Saturday, 43 spaces are required; and on Sundays, 286 spaces are required — all of which are fewer than the 304 spaces available for use. (Oct. Tr. at 8.) Although Mr. Caito testified that he was unaware of the rental of the fitness facility and dance studio, he admitted that expansion of the parking lot is possible given that New Life owns forty acres of land. (Oct. Tr. at 14, 26-28.)
[4] Under Section 7 of the Smithfield Zoning Ordinance, the minimum requirement for parking spaces for a high school, public or private, is one space for every six students, plus one space for each employee plus sufficient off-street parking space for safe and convenient loading and unloading of students and extracurricular activities. Depending on the qualification of the Zoning Board of whether the fitness center is considered an auditorium or stadium, then an additional space shall be provided for every two students. For a "dance hall," or a dance studio, one space for each twenty-five square feet of dance floor space area; plus additional spaces equal to seventy-five percent of the number of employees including musicians. To satisfy parking requirements for the Church, Appellant must have one space for every three seats, plus one for each staff member and site resident, but not fewer than twenty spaces available. Also, all retail business and service establishments, except eating and drinking establishments, must provide four and one-half spaces per 1000 square feet of gross floor area regardless of size of retail business or service establishment.
[5] Additionally, Mr. Michael Corcoran is a member of the pastoral staff and the Director of Operations of New Life Worship Center. Mr. Corcoran explained to the Zoning Board that "[p]retty much everything we do and everything we construct, because of the expense involved in generating these assets, are designed with a multi-purpose in mind." (Nov. Tr. at 38-39.)
[6] Mr. Dube testified that he has a Master's Degree from Sacred Heart University in teaching and is pursuing his doctorate from Liberty University. Additionally, Mr. Dube testified that he was employed as a police officer and State Trooper in Connecticut. Dube has been the principal of the school on the subject parcel for its entire period of operation. (Jan. Tr. at 6.)
[7] Mr. Fonesca, a member of the Zoning Board, testified that he received at his home, the "Smithfield Magazine, and it [wa]s dated November 28, Volume 3, Number 4. And in that there [wa]s an advertisement saying, [that the fitness center and dance studio were] for rent. . . ." (Nov. Tr. at 89.)
[8] The record reflects that the testimony of Mr. Dube as to the use of the fitness center and dance studio by only women patrons during the hours the school is in operation was inconsistent with the prior testimony of Pastor Boyce and Mr. Corcoran.
[9] Furthermore, the Town Planner for the Town of Smithfield, Mr. Michael Phillips ("Mr. Phillips"), wrote a letter to the Zoning Board, which was read into the record and marked as exhibit 13, expressing his opinion that the high "school is not adequately segregated from the health club area and that the security is an issue." (Jan. Tr. at 108.) Additionally, Mr. Phillips wrote "while the Zoning Ordinance does allow schools in all zoning districts by Special Use Permit, it would seem that the security issue needs to be addressed before a finding can be made that these internal uses do not conflict with one another." Id. New Life objected to the letter, written by Mr. Phillips, being entered into the record because Mr. Phillips did not testify before the Board, nor was it clear to New Life what he reviewed prior to forming his opinions that he set forth in the letter. Id. at 111.
[10] New Life also retained Mr. George D. Caldow ("Caldow"), President of Caldow Associates, Inc., to testify as a planning and land use expert. Upon inquiry from the Zoning Board, Mr. Caldow testified that he does know if there is any other school within the State of Rhode Island that has a commercial health fitness facility located within the school building. (Jan. Tr. at 103-104.)